EL PUEBLO DE PUERTO RICO, apelado, *v.* LUIS CASTRO RO-
SARIO, acusado y apelante.

*Número:* CR-87-102     *Resuelto:* 19 de enero de 1990

*Mark Anthony Bimbela, Carmen Ana Rodríguez Maldonado* y *Cándida Valdespino Zapata*, de la *Sociedad para Asistencia Legal*, abogados del apelante; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General*, y *Ricardo E. Alegría Pons, Procurador General Auxiliar*, abogados de El Pueblo.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El 5 de octubre de 1987, tras haber sido convicto por violación al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404, y luego de un juicio por tribunal de derecho, el Tribunal Superior, Sala de Carolina, sentenció al acusado apelante a cumplir dos (2) años de reclusión concurrente con la sentencia dictada en el Tribunal de Caguas, pero consecutiva con cualquier otra pena por disposición de ley.

No conforme, apeló alegando que el tribunal de instancia erró al: (1) no suprimir evidencia que fue ocupada ilegalmente por ser producto de un registro contrario a derecho y (2) no establecer la culpabilidad más allá de duda razonable.

El único testigo del Ministerio Público fue el policía Fernando Soler. Las partes estipularon la prueba de campo, el análisis químico y "que en el registro efectuado, no medió orden de arresto, registro o allanamiento y el peso de la prueba le corresponde al fiscal". E.N.P. enmendada, pág. 1. La defensa no presentó prueba.

I

*Los hechos*

En síntesis, el policía Soler declaró que en la noche de 18 de diciembre de 1985 se encontraba en una patrulla fantasma —no rotulada— en la Carretera Núm. 3, Km. 6.4, jurisdicción de Carolina. Estaba uniformado. Como a una distancia de unos treinta (30) o treinta y cinco (35) pies observó al acusado que conducía un vehículo y fumaba algo que aparentaba ser un cigarrillo de marihuana. Entonces, el vehículo cruzó la luz roja y él le ordenó detenerse. Continuó atestiguando que cuando el acusado se percató de su presencia se tragó lo que tenía en la mano.

Una vez el acusado detuvo el vehículo, el policía le ordenó a éste y a su acompañante que se bajaran del mismo. El acusado, entonces, pidió que no le hiciera daño, que tenía unos materiales en el vehículo. El policía Soler entendió que esto significaba que el acusado tenía más droga en el vehículo. Ante estas circunstancias, solicitó ayuda por el radioteléfono. Este momento de distracción lo aprovecharon, el acompañante del acusado para correr y evadirse, y el acusado para encerrarse en el vehículo, rehusando salir del mismo y diciendo que para bajarlo tenían que matarlo. Luego puso en marcha el vehículo y huyó.

Entonces, el policía Soler procedió a perseguir al acusado hasta el Residencial Sabana Abajo, donde éste dejó el vehículo prendido de forma directa y continuó huyendo a pie. Como el sitio era oscuro y habían ocurrido ciertos altercados a tiros allí, el policía Soler se quedó en la patrulla en lo que llegaban otros agentes. Una vez llegaron éstos, se dirigió al vehículo y tan pronto abrió la puerta vio un cono cerca de la emergencia. Lo ocupó y comprobó que contenía picadura que aparentaba ser marihuana. Continuó buscando y en el cenicero encontró un cigarrillo de marihuana. En el vehículo también encontró una cartera color marrón, una licencia y

un pasaporte con la foto del acusado. Entonces, cotejaron la tablilla y averiguaron que el vehículo era hurtado.

## II

*Registro sin orden judicial de vehículo de motor abandonado luego de una persecución*

■ Una vez más nos confrontamos con evidencia obtenida por agentes del orden público luego del registro de un automóvil sin orden judicial. Reiteradamente hemos expresado que aunque la expectativa de intimidad es menor cuando se trata del registro de un automóvil, esto no significa, sin embargo, que éste no esté cobijado por la protección que brinda la Sec. 10 del Art. II de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, "'contra registros, incautaciones y allanamientos irrazonables'. . .". *Pueblo v. Malavé González*, 120 D.P.R. 470, 474 (1988). Véase *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770 (1982).

■ Hemos establecido, como norma general, que la legalidad del registro de un automóvil sin autorización judicial dependerá de si éste es razonable a la luz de "los hechos y circunstancias —la atmósfera total— del caso . . . [y que u]na mera infracción menor de tránsito no justifica el registro de un automóvil [a menos que] circunstancias especiales pued[an] proveer la justificación necesaria, en adición a [la] infracción de tránsito". *Pueblo v. De Jesús Robles*, 92 D.P.R. 345, 359 (1965). Véase *Pueblo v. Malavé González*, supra. Además, que una vez se efectúa un registro sin orden judicial surge una presunción de ilegalidad y el Fiscal "viene obligado a probar que el registro realizado fue legal y razonable . . .". *Pueblo v. Martínez Torres*, 120 D.P.R. 496, 502 (1988). Véanse: *Pueblo v. Malavé González*, supra; *Pueblo v. Rivera Rivera*, 117 D.P.R. 283 (1986); *Pueblo v. Vázquez Méndez*, 117 D.P.R. 170 (1986).

Ahora bien, la norma constitucional que prohíbe el registro sin orden judicial previa no es absoluta. Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II; *Pueblo v. Rivera Rivera*, supra; *Pueblo v. Vázquez Méndez*, supra; *Pueblo v. Del Río*, 113 D.P.R. 684 (1982); *Pueblo v. Alcalá Fernández*, 109 D.P.R. 326 (1980); *Pueblo v. Lebrón*, 108 D.P.R. 324 (1979); *Pueblo ex rel. E.P.P.*, 108 D.P.R. 99 (1978); *Pueblo v. González Rivera*, 100 D.P.R. 651 (1972); *Pueblo v. Lafontaine Álvarez*, 98. D.P.R. 75 (1969); *Cepero Rivera v. Tribunal Superior*, 93 D.P.R. 245 (1966); *Pueblo v. Cabrera Cepeda*, 92 D.P.R. 70 (1965); *Pueblo v. Soto*, 77 D.P.R. 206, 210–215 (1954); Informe sobre Reglas de Procedimiento Criminal de Puerto Rico del Secretariado de la Conferencia Judicial, Revisión de 1982, pág. 26; D. Nevares-Muñiz, *Sumario de derecho procesal penal puertorriqueño*, 2da ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1981, Secs. 7.5 a 7.7. Hemos reconocido excepciones: (a) cuando se trate de un registro de la persona y del área al alcance inmediato de donde se encuentre, siempre que sea incidental a un arresto legal (*Pueblo v. Malavé González*, supra; *Pueblo v. González Rivera*, supra; *Pueblo v. Sosa Díaz*, 90 D.P.R. 622 (1964); *Pueblo v. Miranda*, 79 D.P.R. 132 (1956)); (b) cuando se da el consentimiento para el registro o se renuncia al derecho constitucional contra registros y allanamientos irrazonables (*Pueblo v. González Rivera*, supra, págs. 656–657), y (c) cuando el registro se da en situación de emergencia (*Pueblo v. Rivera Collazo*, 122 D.P.R. 408 (1988)). Véase, también, en parte, O. Resumil de Sanfilippo, *En nombre del debido proceso de ley*, LVIII Rev. Jur. U.P.R. 135, 171 (1989). También hemos establecido que no es necesaria una orden judicial previa cuando se trata de evidencia que se encuentra a plena vista (*Pueblo v. Dolce*, 105 D.P.R. 422 (1976); *Pueblo v. Espinet Pagán*, 112 D.P.R. 531, 537 (1982)), cuando el agente del orden público obtiene conocimiento de la existencia del material delictivo por el olfato (*Pueblo v. Acevedo Escobar*, su-

pra, pág. 779), o cuando el material ha sido abandonado o arrojado (*Pueblo v. Ortiz Zayas*, 122 D.P.R. 567 (1988); *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139 (1985)).

■ El mandato constitucional de que "[s]ólo se expedirán mandamientos autorizando registros y allanamientos . . . por autoridad judicial" (Art. II, Sec. 10 de la Carta de Derechos, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 299) tiene como propósito "proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias e interponer la figura de un juez entre los funcionarios públicos y la cuidadanía para ofrecer mayor garantía de razonabilidad a la intrusión". *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207 (1984); *Pueblo v. Dolce*, supra, págs. 429–431; *Pueblo v. Malavé González*, supra.

■ El derecho de un acusado a impugnar un registro sin orden judicial por irrazonable depende exclusivamente de si éste era acreedor a "la protección constitucional y si tenía o no una expectativa legítima de intimidad sobre el lugar que fue objeto del registro y sobre los objetos que fueron ocupados". *Pueblo v. Narváez Cruz*, 121 D.P.R. 429 (1980); *E.L.A. v. Coca Cola Bott. Co.*, supra; W. Rinjel, *Searches & Seizures, Arrests and Confessions*, Nueva York, C. Boardman Co., 1985, Sec. 11.7; W. LaFave, *Search and Seizure*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 1, Sec. 2.6(b), págs. 466–467. Este principio apuntala la norma de que la garantía constitucional contra registros y allanamientos irrazonables no proteje las estructuras abandonadas (*Pueblo v. Erausquín Martínez*, 96 D.P.R. 1 (1968)), evidencia arrojada o abandonada (*Pueblo v. Ortiz Zayas*, supra; *Pueblo v. Ortiz Martínez*, supra; *Pueblo v. Rivera Martínez*, 97 D.P.R. 814 (1969)), evidencia a "plena vista" (*Pueblo v. Dolce*, supra) y que sólo el "titular" del derecho puede válidamente renunciar al mismo (*Pueblo v. Narváez Cruz*,

supra; *Pueblo ex rel. F.J.M.R.*, 111 D.P.R. 501 (1981); *Pueblo v. Barrios*, 72 D.P.R. 171 (1951)).

▬ Como hemos señalado, no hay duda alguna de que los vehículos caen dentro del ámbito de protección de la garantía constitucional contra registros y allanamientos irrazonables. *Pueblo v. Malavé González*, supra. Los registros que de ellos se hagan están sujetos a los estándares constitucionales de razonabilidad. LaFave, *op. cit.*, Sec. 2.5(a), pág. 443. No puede efectuarse un registro sin orden en un automóvil sobre el cual su dueño o conductor retenga una expectativa legítima de intimidad, a pesar de que la misma es menor cuando se trata del registro de un vehículo. Dicha expectativa se pierde cuando el automóvil ha sido abandonado.[1]

▬ Para determinar si un vehículo ha sido abandonado hay que examinar ciertas circunstancias que, de estar presentes, nos llevarían a tal conclusión. En este sentido, LaFave nos señala que, cuando el Estado descansa en la teoría del abandono para justificar el hallazgo de evidencia en un vehículo, tiene que establecer que hubo la intención de abandonar dicho vehículo por parte de su dueño o conductor. Expone el tratadista que para establecer este elemento intencional se puede acudir a la definición del derecho de propiedad en términos de qué constituye un bien abandonado. Sin embargo, continúa diciendo, dicha definición no ofrece una explicación razonable y suficiente para resolver muchos de los casos que tienen que considerar nuestros tribunales. Surge así la necesidad de aplicarse un principio mucho más amplio:

---

[1] Al hablar de vehículos abandonados no nos referimos a la definición que de este término provee la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 141 de 20 de julio de 1960, según enmendada, 9 L.P.R.A. sec. 301 *et seq.*, específicamente en la Sec. 1151.

. . .[L]o importante no es determinar si alguien "tiene un interés propietario o posesorio en el automóvil al momento de la actividad policíaca en cuestión", tomando en consideración las "sutiles distinciones de los conceptos del derecho de propiedad", sino hasta qué punto "el acusado tenía derecho a una expectativa legítima de que su vehículo estuviera libre de toda intervención gubernamental". (Traducción nuestra.) LaFave, *op. cit.*, Sec. 2.5(a), pág. 444.

Expresa además LaFave que para determinar si el dueño o el conductor del vehículo carece de toda expectativa legítima de intimidad sobre el mismo hay que examinar la totalidad de las circunstancias relacionadas con el tratamiento que éste le ha dado al automóvil. Ciertamente hay circunstancias en las que, dependiendo de la forma en que el vehículo fue abandonado en la escena del delito, es razonable concluir que con respecto a dicho automóvil no existe ninguna expectativa legítima de intimidad.

*Los tribunales han concluido que un auto ha sido abandonado cuando surge que el conductor del mismo lo dejó en un esfuerzo por evitar ser capturado por la policía. Algunas veces la policía ha estado persiguiendo el automóvil y el conductor de éste decide dejarlo y huir a pie.* En otras ocasiones el vehículo está estacionado cuando su ocupante, luego de percatarse de que la policía se acerca, sale del mismo y huye. (Citas omitidas, énfasis suplido y traducción nuestra.) LaFave *op. cit.*, Sec. 2.5(a), pág. 447.

A la luz de la doctrina antes expuesta, examinemos los hechos en el caso de autos para determinar si de los "hechos y circunstancias —atmósfera total—" surgen las circunstancias especiales que proveen la justificación necesaria para que, unido a la infracción menor de tránsito, el registro sin orden judicial sea razonable y válido. Veamos.

## III

*Aplicación de las normas de derecho a los hechos*

De la exposición narrativa de la prueba surge que, mientras el acusado conducía un vehículo que luego resultó ser hurtado, el policía Soler lo vio fumando lo que aparentaba ser un cigarrillo de marihuana. Cuando aquél cruzó una luz roja el policía Soler le ordenó detenerse, a la vez que observó cuando el acusado se tragó lo que tenía en la mano. Ya fuera del vehículo, el acusado hizo referencia a que tenía lo que el policía Soler entendió era más droga en el automóvil. Más tarde, el acusado aprovechó el hecho de que el policía Soler estaba pidiendo ayuda por el radioteléfono para montarse en el vehículo y, tras rehusar abrir la puerta y bajarse, huyó. En ese momento el policía comenzó una persecución del vehículo conducido por el acusado apelante. De forma contemporánea a la persecución, el acusado detuvo el auto en el Residencial Sabana Abajo y lo dejó allí con el motor en marcha para continuar su huida a pie.

Indudablemente estas actuaciones y observaciones le dieron al policía Soler suficientes motivos fundados para creer que el acusado estaba cometiendo un delito; en este caso, que tenía sustancias controladas en el vehículo.

A base de todo lo antes expuesto, podemos concluir que el acusado apelante abandonó el vehículo en que emprendió la huida. A partir de ese momento perdió toda expectativa legítima de intimidad que pudo tener sobre dicho vehículo.[2]

Resolvemos, pues, a la luz de lo aquí señalado, que cuando estén presentes estos elementos, y si tras una persecución policíaca el conductor del vehículo abandona éste en

---

[2] Cabe señalar que el acusado tampoco tenía interés legal en la propiedad, pues el vehículo objeto del registro y allanamiento resultó ser hurtado.

En relación con el registro sin orden judicial de un vehículo hurtado, véase W. LaFave, *Search and Seizure*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 4, Sec. 11.3(e).

la vía pública y continúa huyendo a pie, los agentes del orden público tienen derecho, allí en ese momento y sin orden judicial, a registrar el vehículo y tomarlo bajo custodia. No se cometió el primer error señalado por el acusado apelante.

El resultado a que hemos llegado al analizar el primer señalamiento de error nos lleva a concluir que el segundo error señalado tampoco fue cometido. Además, la exposición narrativa de la prueba que hemos reseñado demuestra que la culpabilidad fue establecida más allá de duda razonable.

Por todo lo antes expuesto, *se dictará sentencia que confirma la dictada por el tribunal de instancia.*

El Juez Presidente Señor Pons Núñez disiente sin opinión escrita. El Juez Asociado Señor Negrón García concurre con el resultado con opinión escrita.

—O—

Opinión concurrente del Juez Asociado Señor Negrón García.

Concurrimos con la decisión del Tribunal confirmatoria de la sentencia del tribunal de instancia. Sin embargo, aunque la *doctrina de evidencia arrojada o abandonada* dispone del asunto ante nos, es menester analizar el aspecto central que la configura, a saber, la "atmósfera total" del caso que dio lugar a la intervención legítima policíaca. Para determinar la presencia o el abandono a la expectativa de intimidad que una persona pueda tener sobre un bien u objeto es necesario atender, mediante un examen objetivo, las circunstancias contemporáneas al registro conocidas por el funcionario. *Pueblo v. Malavé González,* 120 D.P.R. 470 (1988), opinión disidente; *Pueblo v. Martínez Torres,* 120 D.P.R. 496 (1988), opinión disidente. Expongamos suscintamente los hechos.

## I

La noche de 18 de diciembre de 1985 —en la Carretera Núm. 3, Km. 6.4 de Carolina— el policía Fernando Soler intervino con Luis Castro Rosario por éste no haber detenido el vehículo de motor que conducía ante la luz roja de un semáforo. Le ordenó que se detuviera. Acatada esa orden, Soler les pidió a Castro Rosario y a su acompañante que se bajaran del vehículo. Ambos obedecieron. Luego de una breve conversación, Soler fue a su auto patrulla a solicitar ayuda a través del sistema de radio. En ese momento, el individuo que acompañaba a Castro Rosario corrió y abandonó el área y éste entró, se encerró dentro del vehículo, lo puso en marcha y huyó.

Inmediatamente, el policía Soler emprendió una persecución que lo llevó al Residencial Sabana Abajo, Carolina. Allí, Castro Rosario dejó *encendido* el vehículo y se adentró en el residencial. Soler, en vista de la oscuridad del lugar y conociendo que en el pasado se habían desatado varios altercados de balas, optó por permanecer en su vehículo en espera del respaldo policial solicitado.

Una vez llegó la ayuda, Soler se dirigió al vehículo abandonado con el propósito de detener la marcha del motor. Al hacerlo, se percató de la presencia de un cono de papel en el área de los asientos delanteros.[1] Lo ocupó y encontró en su interior lo que parecía ser picadura de marihuana. Continuó su búsqueda y en el cenicero halló "una envoltura de papel a manera de cigarrillo" que aparentemente tenía picadura de marihuana. También encontró y ocupó una cartera color marrón que contenía en su interior una licencia y un pasaporte con la foto de Castro Rosario.

---

[1] En algunos extremos su declaración fue confusa. En diversas ocasiones atestó que el cono de papel se encontraba tanto en el asiento del conductor como entre el asiento del pasajero y la palanca de emergencia. E.N.P., págs. 3 y 14.

Ante estas circunstancias, Soler solicitó por radio una relación del número de la tablilla del vehículo y fue notificado que aparecía reportado como hurtado. Junto con los demás policías, lo trasladó a la División de Tránsito en Carolina.

La prueba de campo, al igual que un análisis posterior de laboratorio, dio como resultado "positivo de marihuana". Oportunamente, Castro Rosario fue acusado en el Tribunal Superior, Sala de Carolina, por su posesión ilegal. Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404.

Durante el proceso, Castro Rosario pidió la supresión de la marihuana. En esencia, sostuvo que su ocupación fue producto de un registro sin orden, pues el policía Soler careció de motivos fundados. Dilucidada la cuestión conjuntamente con los méritos del caso, el tribunal ordenó la supresión del cigarrillo de marihuana pero sostuvo la admisibilidad de la marihuana del cono y lo declaró culpable.

Inconforme, en apelación cuestiona la suficiencia y admisibilidad de esa prueba.[2] No tiene razón.

## II

El Art. II, Sec. 10 de nuestra Constitución, L.P.R.A., Tomo 1, consigna, como regla general, que todo registro, allanamiento o incautación se lleve a cabo mediante orden

---

[2] Sus señalamientos de error disponen:

"(a) La prueba que presentó el Ministerio Público es insuficiente en derecho para establecer la culpabilidad del acusado más allá de toda duda razonable por el delito imputado, ya que la misma fue increíble y totalmente estereotipada.

"(b) Erró el Honorable Tribunal de Instancia al declarar parcialmente con lugar y parcialmente sin lugar nuestra Moción de Supresión de Evidencia, admitiendo prueba en evidencia que fue ocupada ilegalmente al ser producto de un registro contrario a derecho. Toda la evidencia ocupada y que se pidió mediante la Moción de referencia fuese suprimida, fue producto del registro en controversia.

"(c) Erró el Honorable Tribunal de Instancia al determinar que el registro efectuado se ajustaba a la Doctrina a 'plena vista'." Escrito de apelación, pág. 1.

judicial previa. Sólo "[c]ircunstancias de emergencia pueden provocar excepciones. a la regla general". (Énfasis suplido.) *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207–208 (1984).

Para un acusado poder impugnar un registro sin orden judicial previa es necesario, en primer lugar, que posea *capacidad o legitimación activa* para invocar su derecho a la privacidad. Una vez demostrado que es acreedor a esa expectativa *legítima* sobre el bien o lugar en cuestión, podrá el tribunal adjudicar la legalidad del registro. El peso corresponde al Estado. *Pueblo v. Rivera Rivera*, 117 D.P.R. 283, 291–292 (1986); *Pueblo v. Narváez Cruz*, 121 D.P.R. 429 (1988); *E.L.A. v. Coca Cola Bott. Co.*, supra. De carecer de legitimación activa, la intervención judicial culmina ahí, puesto que el registro lo realizó el Estado bajo circunstancias que le eximían del requisito de orden judicial previa.

De ordinario, desde el momento en que una persona arroja o abandona un objeto, pierde toda expectativa de intimidad y con ello la necesidad de que mediara una orden judicial previa para su registro, allanamiento o incautación. Tal renuncia ha de inferirse de un examen objetivo de los hechos conocidos al momento en que ocurre el abandono. *United States v. Kendall*, 655 F.2d 199, 201 (9no Cir. 1981). El análisis requiere, entre otros aspectos, determinar: "(1) si el abandono fue voluntario o inadvertido; (2) el lugar donde ocurrió el abandono; (3) las circunstancias en que fue abandonado; (4) la naturaleza y las características del objeto abandonado; (5) si hubo intentos de recuperación del objeto abandonado; (6) el tiempo transcurrido entre el abandono y el intento de recuperación, y (7) las medidas tomadas para preservar la intimidad." *Pueblo v. Ramírez Lebrón*, 123 D.P.R. 391, 402–403 (1989), opinión concurrente. Véase *United States v. Walker*, 624 F. Supp. 99, 101 (D. Md. 1985).

Ahora bien, cuando el abandono ha sido el resultado de una persecución policíaca, es necesario atender otros crite-

rios adicionales. Primeramente, la persecución tiene que ser legal, esto es, los agentes deben haber tenido una razón para tal actuación. Las circunstancias tienen que ser tales que sitúen a la persona perseguida en posición de conocer la presencia y persecución por parte de los agentes públicos (*guilty flight*). *Pueblo v. González Charón*, 83 D.P.R. 450, 451 (1961); *United States v. Masiello*, 491 F. Supp. 1154, 1161 (D.S.C. 1980); *United States v. Williams*, 569 F.2d 823, 826 (5to Cir. 1978).

Bajo esta normativa, el conductor que se da a la fuga —*pretendiendo escapar de la justicia*— y deja atrás el vehículo y su contenido, en efecto da a conocer su intención de abandonarlo a los fines de renunciar cualquier expectativa de intimidad que pudiese tener. *Thom v. State*, 450 S.W.2d 550 (S. Ct. Ark. 1970); *State v. Asbury*, 602 P.2d 838 (Ariz. App. 1979); *United States v. Masiello*, supra; W. LaFave, *Search and Seizure*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 1, Sec. 2.5(a). De no ser esa la situación, es necesario ir más allá y estudiar la razonabilidad del registro realizado ante el derecho y prerrogativa de la persona a esperar cierto grado de intimidad. Expongamos esta dimensión.

### III

Existen marcadas diferencias en lo que respecta a la razonabilidad de un registro llevado a cabo en un vehículo de motor, a diferencia del que se realiza en una residencia o estructura inmueble. La expectativa de intimidad que puede esperarse del vehículo que transita por las vías públicas es de menor grado. Ese enfoque se apuntala en que el automóvil es un objeto de casi continua exposición al público, que existe una reglamentación vehicular gubernamental detallada y que su operación está sujeta a detenciones investigativas por violaciones a la Ley de Vehículos y Tránsito de Puerto Rico. Su naturaleza y disposición lo sitúan en una posición de alto escrutinio por parte de las autoridades gu-

bernamentales. *Pueblo v. Malavé González*, supra; *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770, 776 (1982). Ante la expectativa de intimidad, aunque aminorada, subsiste el requisito de causa probable o motivo fundado para que una intervención policíaca sea válida sin orden judicial. *Pueblo v. De Jesús Robles*, 92 D.P.R. 345, 359 (1965).

Al respecto, el requisito de motivo fundado para intervenir con una persona que conduce un vehículo de motor o que acredite su registro no reside en una "mera infracción menor de tránsito . . . [p]ero circunstancias especiales pueden proveer la justificación necesaria, en adición a [la] infracción de tránsito". *Pueblo v. De Jesús Robles*, supra; *Pueblo v. De Jesús Franqui*, 96 D.P.R. 643 (1968). Estas circunstancias especiales se presentan cuando un agente de la policía descubre evidencia intrínsecamente delictiva a plena vista luego de una detención investigativa por una infracción de tránsito. *Pueblo v. Dolce*, 105 D.P.R. 422 (1976); *Pueblo v. Malavé González*, supra. También, se suscitan cuando el agente presta ayuda a un conductor accidentado que se encuentra inconsciente, observando en el interior del vehículo ciertos instrumentos aparentemente utilizados para cometer un delito y descubriendo cocaína dentro de una cajetilla de cigarrillos que se le cayó al conductor mientras era sacado del automóvil. *Pueblo v. Rivera Collazo*, 122 D.P.R. 408 (1988).

Ciertamente, esta casuística no agota el inventario. Existen otras instancias en que un policía puede válidamente entrar en el interior de un vehículo de motor. Aun así, deben concurrir circunstancias excepcionales que lo justifiquen, por lo que tiene que limitarse la extensión del registro a lo razonable. *Pueblo v. Rivera Collazo*, supra. Estas deben infundir en el "policía . . . la creencia razonable de que existe una [situación] que requiere de su inmediata asistencia para la protección de vidas o propiedad; [no pudiendo estar motivada] la entrada o registro . . . por un intento de arrestar o

buscar evidencia y debe haber alguna relación entre la [situación] y el área o sitio en que se penetra". Íd.

Así, toda evidencia ilegal a plena vista podrá ser ocupada sin mediar orden judicial previa, si el artículo se descubrió por estar a plena vista y no en el curso o por razón del registro; el agente tenía derecho a estar en la posición desde la cual podía verla; la descubrió inadvertidamente, y la naturaleza delictiva del objeto surgió de su simple observación. *Pueblo v. Dolce*, supra, pág. 436.

A la luz de lo expuesto, evaluemos si debió suprimirse la marihuana ocupada por el policía Soler.

### IV

Concluimos que los hechos que culminaron en la ocupación del cono contentivo de la marihuana fueron suficientes para justificar esa intervención. El vehículo de motor desocupado, con el motor encendido, no podía permanecer desatendido, máxime cuando el agente interventor conocía con razonable certeza que su conductor no regresaría. A fin de cuentas se dio a la fuga luego de ser detenido por una infracción a la Ley de Vehículos y Tránsito de Puerto Rico. No era de esperarse que retornara al área donde lo había *abandonado* a toda prisa.

Ante este cuadro fáctico, es obvio que el policía Soler tuvo motivos fundados para penetrar en su interior. Como resuelve la mayoría, para efectos de la garantía constitucional contra registros y allanamientos irrazonables, el abandono de dicho vehículo relevó al Estado de una orden judicial.

Tal vez él retuvo una esperanza de que podría lograr dos propósitos: su protección contra la posesión de evidencia mientras era perseguido y la posibilidad de recobrar el [vehículo] si ni [el oficial] ni alguien más lo tomaba .... Tal conducta es claramente un abandono del firme agarre de la propiedad y una dependencia en la débil esperanza de la readqui-

sición. (Traducción nuestra.) *United States v. Williams*, 569 F.2d 823, 826 (5to Cir. 1978).

Ahora bien, independientemente del abandono del vehículo, el agente Soler *tuvo razones adicionales* que justificaron su intervención. Por razones de seguridad, era necesario que detuviese la marcha del motor. La Ley de Vehículos y Tránsito de Puerto Rico, en sus Secs. 5–701.1 y 5–710, autoriza a los agentes de policía a intervenir y remover vehículos de motor cuando éstos se encuentran ilegalmente estacionados y el conductor no está disponible. 9 L.P.R.A. secs. 1012 y 1022. Por ello, la entrada al vehículo fue razonable y justificada dentro de las circunstancias. Así pues, la presencia a plena vista en el interior del vehículo de un cono de papel de apariencia similar al utilizado para guardar picadura de marihuana alertó al agente, quien al abrirlo confirmó sus sospechas. Su conducta fue razonable. Por la naturaleza delictiva del objeto, éste fue debidamente ocupado.

Actuó correctamente el tribunal de instancia al negar la supresión de esa evidencia. La misma, en unión al testimonio del agente Soler, demostró la culpabilidad de Castro Rosario más allá de duda razonable. *Pueblo v. Malavé González*, supra, y *Pueblo v. Martínez Torres*, supra, opiniones disidentes.