# 2001 DTA 136

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL V DE PONCE Y AIBONITO**

EL PUEBLO DE PUERTO RICO
Recurrido

v.

HECTOR M. MALAVE MATEO, ARIEL MUÑOZ APONTE
Peticionarios

Núm. KLCE-01-00227

San Juan, Puerto Rico, a 23 de marzo de 2001

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Ortiz Carrión y la Juez Pabón Charneco

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

### I

Los peticionarios, Héctor M. Malavé Mateo y Ariel Muñoz Aponte, solicitan revisión de una resolución emitida en corte abierta el 25 de enero de 2001 por el Tribunal de Primera Instancia, Sala Superior de Ponce, en el procedimiento criminal seguido ante dicho Tribunal contra los peticionarios por violación al art. 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2404, por posesión de marihuana.

Mediante el dictamen en cuestión, el Tribunal de Primera Instancia denegó una moción presentada por los peticionarios para la supresión de cierta evidencia que les fuera ocupada, consistente de una cantidad de droga.

Denegamos.

### II

Según se desprende del recurso, los peticionarios fueron arrestados por los agentes del orden público Henry Morales Lombay y Héctor Mercado Vega en la tarde del 2 de marzo de 2000 en la Carretera Núm. 510, en el Barrio Piedra Aguzá de Juana Díaz, por la posesión de marihuana. Durante el arresto de los peticionarios, los agentes les ocuparon una bolsa de marihuana. Subsiguientemente, se presentó una denuncia en contra de los peticionarios ante el Tribunal de Primera Instancia por infracción al art. 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2404.

Luego de otros incidentes, el 16 de mayo de 2000, el Tribunal determinó causa probable para la acusación por el delito mencionado.

Presentada la acusación, el peticionario Ariel Muñoz Aponte solicitó la supresión de la evidencia ocupada. El peticionario Héctor M. Malavé Mateo se unió a dicha solicitud. El Ministerio Público se opuso.

Oportunamente, el Tribunal de Primera Instancia celebró una vista evidenciaria. Testificaron en la misma, los agentes Morales y Mercado.

Según se desprende de la moción de supresión, la versión ofrecida por el agente Morales fue que el 2 de marzo de 2000 fue instruido por el Sargento Easterling Alvarado Rivera que fuera en un vehículo confidencial con una radio portátil y unos binoculares a prestar una vigilancia en la Calle 2 del Barrio Piedra Aguzá de Juana Díaz.

El agente llegó a las 4:30 de la tarde, se estacionó y observó que debajo de un árbol de almendro había un individuo de tez blanca, sin camisa y mahón azul largo sentado en una silla. A eso de las 4:37 llegó un vehículo con dos personas en su interior. El pasajero se bajó con un billete en las manos, se le acercó al individuo que estaba debajo del almendro y le entregó el billete. El individuo, a su vez, le entregó una bolsita plástica transparente con aparente picadura de marihuana. El pasajero abordó nuevamente el vehículo y se fue del lugar. El agente notificó de su observación por radio, por lo que el vehículo fue intervenido.

En el recurso se añade que durante su testimonio, el agente Morales declaró que su vigilancia del lugar obedecía a que se habían recibido unas confidencias en cuanto a que debajo de un árbol de almendro, un individuo conocido por Javier operaba un punto de drogas tipo "*servi-carro*". Alegadamente, el agente no pudo aclarar si había recibido una o varias confidencias. Aclaró que las confidencias se habían recibido hacía un año.

El agente supuestamente nunca había visitado dicho sector anteriormente. No pudo precisar cómo logró identificar el árbol de almendro bajo el cual se ubicaba Javier. Dicho árbol está a un nivel más bajo que la carretera. El agente declaró que la bolsita de marihuana que sacó Javier tenía pulgada y media de tamaño.

A preguntas de la defensa, supuestamente declaró que había estado vigilando aproximadamente 30 minutos y que en ese período de tiempo no había visto ningún otro automóvil, vecinos, niños jugando, estudiantes, ni personas caminando por las aceras, a pesar de que se trataba de un sector con viviendas y de que eran las 4:30. También declaró que en todo el tiempo que estuvo haciendo la vigilancia, el individuo conocido por Javier nunca miró hacia los lados, que tampoco miró hacia el lado cuando se bajó el pasajero del automóvil.

Por su parte, la moción de supresión aseveraba que el agente Mercado supuestamente había declarado que el 2 de marzo de 2000 participaba en un plan de vigilancia con el agente Morales quien estaba encargado de transmitirle por radio cualquier transacción de sustancias controladas que observara en el sector Piedra Aguzá de Juana Díaz.

Según el agente Mercado, cuyo testimonio fue estipulado en la vista preliminar, a las 4:37 de la tarde recibió información del agente Morales de que el pasajero de un vehículo Hyundai Accent, tablilla CFX-631, había hecho una transacción de drogas en el lugar. El agente Mercado procedió a interceptar dicho vehículo en la carretera 510. Sacó a los pasajeros del automóvil, los puso bajo arresto, los registró y no encontró nada. Tampoco vio ninguna droga dentro del vehículo, de primera intención. Cuando se montaba en el vehículo para llevárselos para la División de Drogas de Ponce, vio una bolsa plástica transparente en la palanca de cambios con alegada marihuana en su interior y la misma estaba abierta. Al ser confrontado con su declaración original de que no había visto droga dentro del vehículo, el agente Mercado indicó en la vista preliminar que se había equivocado.

A base del testimonio relatado, el Tribunal de Primera Instancia declaró sin lugar la solicitud de supresión de evidencia de los peticionarios.

Insatisfechos, éstos acudieron ante este Tribunal.

## III

En su recurso, los peticionarios plantean que erró el Tribunal de Primera Instancia al denegar su solicitud de supresión y al apreciar la prueba desfilada durante la vista.

La Sección 10 del Artículo II de la Constitución del Estado Libre Asociado protege a los ciudadanos contra registros, incautaciones y allanamientos irrazonables, añadiendo que: *"[s]ólo se expedirán mandamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse."* La evidencia obtenida en violación a dicha sección, es inadmisible en los tribunales. Véanse, *Pueblo v. Soto Ortiz*, 151 D.P.R. __ (2000), **2000 J.T.S. 119**, a la pág. 1,486; *Pueblo v. Narváez Cruz*, 121 D.P.R. 429, 436 (1988); *Pueblo v. Falú Martínez*, 116 D.P.R. 828, 838-39 (1986); *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207-08 (1984).

Esta disposición es similar, aunque más abarcadora, a la de la Cuarta Enmienda de la Constitución de los Estados Unidos, cuya aplicación ha sido extendida a los Estados a través de la Enmienda Catorce. *Mapp v. Ohio*, 367 U.S. 643, 660 (1961); *Pueblo v. González Rivera*, 100 D.P.R. 651, 655-56 (1972).

Según ha explicado el Tribunal Supremo de Puerto Rico, el propósito de dicho precepto es la protección de la intimidad y dignidad de los seres humanos y sus pertenencias, domicilio o propiedad, frente a las actuaciones irrazonables por parte del Estado e interponer la figura del juez entre los funcionarios públicos y la ciudadanía para así brindarle una mayor garantía de razonabilidad ante tal intrusión. Véase, *Pueblo v. Miranda Alvarado*, 143 D.P.R. __ (1997), **97 J.T.S. 84**, a la pág. 1,114; *Pueblo en el Interés del Menor N.O.R.*, 136 D.P.R. 949, 956 (1994); *Pueblo v. Muñoz, Colón y Ocasio*, 131 D.P.R. 965, 979 (1992).

Para concluir si la actuación del Estado constituye un registro, es necesario determinar si la persona afectada tenía una expectativa de intimidad sobre el lugar o artículo a ser registrado, y si tal expectativa es razonable a la luz de los criterios prevalecientes en la sociedad. *RDT Const. Corp. v. Contralor I*, 141 D.P.R. 424, 436 (1996); *Pueblo v. Santiago Feliciano*, 139 D.P.R. 361, 384 (1995).

Al determinar si la persona que invoca haber sufrido un registro irrazonable albergaba una expectativa razonable a la intimidad, el Tribunal debe examinar los siguientes factores: (1) el lugar registrado o allanado; (2) la naturaleza y el grado de la intrusión de la intervención; (3) el objetivo o propósito de la intervención; (4) si la conducta de la persona era indicativa de una expectativa subjetiva de intimidad; (5) existencia de barreras físicas que restrinjan la entrada o visibilidad al lugar registrado; (6) la cantidad de personas que tienen acceso al lugar registrado; y (7) las inhibiciones sociales relacionadas con el lugar registrado. Estos factores deben examinarse en conjunto. Ninguno de ellos de por sí sólo resulta determinante. *Pueblo v. Bonilla Bonilla*, 149 D.P.R. __ (1999), **99 J.T.S. 157**, a la pág. 226.

La garantía constitucional se extiende a circunstancias que envuelven un vehículo de motor, aunque en tales casos la protección es menor que la que existe con relación a una residencia. La validez de la intervención dependerá, en uno y otro caso, de su razonabilidad bajo las circunstancias específicas de la situación en que se produce la intervención. *Pueblo v. Camilo Meléndez*, 148 D.P.R. __ (1999), **99 J.T.S. 96**, a la pág. 1,176; *Pueblo v. Yip Berríos*, 142 D.P.R. __ (1997), **97 J.T.S. 14**, a la pág. 568; *Pueblo v. Cruz Torres*, 137 D.P.R. 42, 48-49 (1994).

Ahora bien, la norma constitucional que prohíbe el registro sin orden judicial previa, no es absoluta, ni confiere derechos irrestrictos. Existen distintas circunstancias en las cuales un registro sin orden resulta constitucionalmente permisible, conforme a nuestro ordenamiento. Regla 11 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 11; *Pueblo v. Cruz Torres*, 137 D.P.R. __, a la pág. 47; *Pueblo v. Castro Rosario*, 125 D.P.R. 164, 169-170 (1990); *Pueblo v. Lebrón*, 108 D.P.R. 324, 329 (1979); *Pueblo v. González Rivera*, 100 D.P.R. __, a la pág. 656.

Entre las circunstancias excepcionales bajo las cuales se autoriza el registro sin orden judicial previa, se encuentran, *inter alia*: los registros incidentales a un arresto válido; cuando se ha consentido al registro o se renuncia al derecho constitucional contra registros y allanamientos irrazonables; en circunstancias en que la evidencia ocupada está a simple vista o ésta ha sido abandonada o arrojada; cuando se realiza un registro tipo

inventario y los registros de emergencia. *Pueblo v. Blase Vázquez*, 148 D.P.R. __ (1999), **99 J.T.S. 100**, a la pág. 1,211; *Pueblo v. Miranda Alvarado*, **97 J.T.S. 84**, a las págs. 1,117-18; *Pueblo v. Santiago Alicea I*, 138 D.P.R. 230, 235-236 (1995); *Pueblo v. Castro Rosario*, 125 D.P.R. __, a las págs. 169-70; *Pueblo v. Rivera Rivera*, 117 D.P.R. 283, 291 (1986).

Cuando se trata de un registro incidental a un arresto, es necesario que el mismo sea válido. De lo contrario, la evidencia debe ser excluida. *Pueblo v. Soto Ortiz*, **2000 J.T.S. 119,** a las págs. 1,486-7.

Si el arresto también es llevado a cabo sin una orden judicial previa, el mismo tiene que estar basado en la existencia de "*motivos fundados*" por parte de los agentes, según lo exige la Regla 11 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 11. Este concepto es similar al de "*causa probable*" contemplada por la Sección 10 del Art. II de nuestra Constitución. *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762, 770 (1991); *Pueblo v. Díaz Díaz*, 106 D.P.R. 348, 353 (1988).

"*El concepto de motivos fundados se ha definido como aquella información y conocimiento que lleven a una persona ordinaria y prudente a creer que el arrestado ha cometido un delito, independientemente de que luego se establezca o no la comisión del delito.*" *Pueblo v. Martínez Torres*, 120 D.P.R. 496, 504 (1988) (énfasis original). El mero hecho de que se hubiera llevado a cabo un arresto válido, es insuficiente para convalidar el registro minucioso de la persona arrestada y del área inmediata a su alcance. El registro tiene, además, que ser razonable. *Pueblo v. Zayas Fernández*, 120 D.P.R. 158, 163 (1987); *Pueblo v. Polanco Marcial*, 95 D.P.R. 470 (1967). La razonabilidad del registro se determina caso a caso, a la luz de la atmósfera total de cada situación. *Pueblo v. Zayas Fernández*, 120 D.P.R. __, a la pág. 163. Nuestro Tribunal Supremo ha convalidado el registro minucioso sin orden de la persona del arrestado, sus pertenencias, y del área que está a su alcance inmediato. El mismo se justifica para ocupar armas que puedan ser empuñadas y utilizadas por el acusado para agredir a los agentes del orden público o para intentar una fuga, y para ocupar evidencia que, de otro modo, el arrestado podría destruir. *Pueblo v. Zayas Fernández*, 120 D.P.R. __, a la pág. 164; *Pueblo v. Dolce*, 105 D.P.R. 422, 434 (1976).

Ahora bien, siempre que un registro se lleva a cabo sin orden judicial, se activa una presunción de que el mismo ha sido inválido. El peso corresponde entonces al Ministerio Público para rebatir dicha presunción mediante la presentación de prueba sobre las circunstancias especiales que requirieron proceder al registro o incautación sin la correspondiente orden. *Pueblo v. Ferreira Morales*, 147 D.P.R. __ (1998), **98 J.T.S. 150**, a la pág. 328; *Pueblo v. Miranda Alvarado*, **97 J.T.S. 84**, a la pág. 1,114; *Pueblo v. Santiago Alicea I*, 138 D.P.R. __, a la pág. 235; *Pueblo v. Cruz Torres*, 137 D.P.R. __, a la pág. 47; *Pueblo v. Malavé González*, 120 D.P.R. 470, 476-77 (1988).

El mecanismo procesal adecuado para solicitar la supresión o exclusión de evidencia ilegalmente ocupada es el provisto por la Regla 234 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 234. Dicho precepto autoriza la presentación de una moción de supresión de evidencia, la cual debe expresar los hechos precisos y los fundamentos específicos que sostengan la petición. *Pueblo v. Blase Vázquez*, **99 J.T.S. 100,** a la pág. 1,206; *Pueblo v. Maldonado, Rosa*, 135 D.P.R. 563, 567 (1994).

El Tribunal puede escuchar prueba sobre cualquier cuestión de hecho necesaria para adjudicar la moción, y puede adjudicar la credibilidad de los testimonios vertidos para sostener y/o impugnar el registro. Cuando el registro no ha estado basado en una orden, la celebración de esta vista resulta indispensable para determinar la validez del registro. *Pueblo v. Colón Bernier*, 148 D.P.R. __ (1999), **99 J.T.S. 64**, a la pág. 922; *Pueblo v. Bonilla Romero*, 120 D.P.R. 92, 110 (1987).

De ordinario, la moción de supresión de evidencia debe ser presentada y resuelta con antelación al juicio, aunque ésta puede ser reproducida durante el juicio si la ilegalidad del registro surgiere de la prueba de cargo. *Id.; Pueblo v. Rivera Rivera*, 117 D.P.R. __, a las págs. 289-90.

En la situación de autos, el Ministerio Público alegó, y así lo admitió el Tribunal, que el registro realizado era razonable porque el mismo había sido incidental al arresto válido de los peticionarios y la consiguiente ocupación de su vehículo. Esta, según hemos visto, es una de las excepciones admitidas al requisito de orden previa del Art. II, Sec. 10 de la Constitución. *Pueblo v. Cruz Torres*, 137 D.P.R. __, a la pág. 47; *Pueblo v. Rosario Igartúa*, 129 D.P.R. 1055, 1078 (1992); *Pueblo v. Velazco Bracero*, 128 D.P.R. 180, 185 (1991).

Los peticionarios alegan que el arresto fue inválido por cuanto el mismo estuvo basado en confidencias no corroboradas y remotas en tiempo.

En efecto, el Tribunal Supremo de Puerto Rico ha establecido que la determinación de causa probable para llevar a cabo un registro puede estar basada, no sólo en las observaciones del agente que realiza la intervención, sino en confidencias recibidas de terceros. En estos casos, sin embargo, la confidencia tiene que haber sido corroborada. Es ilegal la detención de un vehículo, sólo basada en confidencias de que esas personas van a cometer un delito, si no hay corroboración de la actividad delictiva o sospechosa. *Pueblo v. Serrano Cancel*, 148 D.P.R. __ (1999), **99 J.T.S. 69**, a la pág. 951; *Pueblo v. Santiago Avilés*, 147 D.P.R. __ (1998), **98 J.T.S. 147**, a la pág. 285; véase, además, *Pueblo v. Díaz Díaz*, 106 D.P.R. 384 (1977).

En la situación de autos, sin embargo, el arresto no descansó directamente en las alegadas confidencias, sino en la observación por los agentes de una transacción de drogas. Las *"confidencias"* en cuestión no se referían a ninguna persona, sino que aludían a la sospecha de que en el lugar se operaba un punto de drogas. La transacción observada por los agentes se llevó a cabo en un lugar abierto, al lado de una carretera pública, donde los peticionarios no tenían expectativa alguna de intimidad a no ser observados. *Pueblo v. Ortiz Rodríguez*, 147 D.P. R. __ (1999), **99 J.T.S. 8**, a las págs. 514-515; *Pueblo v. Cruz Torres*, 137 D.P.R. __, a la pág. 47.

El agente Morales tenía así motivos fundados para intervenir con los peticionarios. Esta información fue trasmitida por radio al agente Mercado, quien, actuando a base de la misma, procedió a arrestar a los peticionarios. Nuestro ordenamiento permite que los agentes del orden público trabajen de forma coordinada en la persecución de los criminales. El conocimiento de cada agente, en estos casos, es atribuible a los demás. *Pueblo v. Martínez Torres*, 120 D.P.R. 496, 504-505 (1988); *Pueblo v. Luzón*, 113 D.P.R. 315, 324 (1984).

En el presente caso, según indicado, el agente Morales observó una transacción de drogas llevada a cabo a plena vista. La evidencia en cuestión no fue ocupada sorpresivamente, sino que los agentes ya la habían visto de antemano y la localizaron en un lugar visible del automóvil. Compárese, *Pueblo v. Cruz Torres*, 137 D.P.R. __, a la pág. 47.

En cualquier caso, habiendo arrestado legalmente a los peticionarios y ocupado su vehículo, los agentes hubieran podido conducir un registro de inventario sobre sus pertenencias, lo que similarmente les hubiera conducido a la droga, la cual estaba en un lugar fácil de observar en el vehículo. *Pueblo v. Sánchez Rodríguez*, 134 D.P.R. 577 (1993); *Pueblo v. Rodríguez Rodríguez*, 128 D.P.R. 438 (1991).

Los peticionarios se quejan de que el Tribunal concediera crédito al testimonio de los agentes, el cual catalogan de estereotipado. Aluden a numerosas inconsistencias en los testimonios ofrecidos e insisten que la versión ofrecida por los agentes resultaba increíble.

El testimonio estereotipado, según ha aclarado el Tribunal Supremo de Puerto Rico, es aquél que se limita a establecer los elementos mínimos para sostener un delito, omitiendo los detalles particularizantes que, de ordinario, revestirían de plausibilidad el testimonio. Se trata de ofrecer una narrativa fija y estereotipada para justificar una intervención policial que de otro modo resultaría impropia. *Pueblo v. Acevedo Estrada*, 150 D.P.R. __ (2000), **2000 J.T.S. 22**, a la pág. 570; *Pueblo v. Camilo Meléndez*, **99 J.T.S. 96**, a la pág. 1,168.

El Tribunal Supremo ha expresado que este tipo de testimonio debe ser objeto de un escrutinio judicial más estricto y riguroso, para evitar que se vulneren los derechos de acusados inocentes. Para evaluar la credibilidad

del mismo, han de emplearse los siguientes parámetros: (1) el testimonio debe ser escudriñado con especial rigor; (2) tanto los casos de la evidencia abandonada o lanzada al suelo como los casos del acto ilegal a plena vista, deben, en ausencia de otras consideraciones, inducir sospecha de la posible existencia de testimonio estereotipado; (3) si el testimonio es inherentemente irreal o improbable, debe rechazarse; (4) el testimonio estereotipado puede perder su condición de tal, si, más allá de los datos mínimos indispensables para probar los elementos del delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles; y (5) la presencia de contradicciones o vaguedades debe reforzar el recelo al evaluar este tipo de declaraciones. *Pueblo v. Acevedo Estrada*, **2000 J.T.S. 22,** a la pág. 577; *Pueblo v. Camilo Meléndez*, **99 J.T.S. 96,** a las págs. 1,168-9.

En el caso de autos, consideramos que, a la luz de estos elementos, el Tribunal de Primera Instancia no abusó de su discreción al denegar la moción de supresión de los peticionarios. El testimonio de los agentes del orden público, en este sentido, no es increíble, ni resulta tan carente de detalles que deba ser descartado por irreal. Aunque la transacción reportada por el agente Morales se realizó en un lugar abierto, el mismo estaba situado a un nivel más bajo de la carretera, lo que disimulaba mejor la existencia del punto. El agente tenía consigo unos binoculares, por lo que no está claro que su presencia hubiese sido detectada por el individuo que estaba en el lugar.

La intervención con los peticionarios tampoco se produjo inmediatamente, ni se plantea que la evidencia hubiese sido arrojada por ellos, sino que éstos fueron detenidos y arrestados luego de haber abandonado el área.

Tal vez la porción del testimonio de los agentes que deba ser tomada con mayor suspicacia, es su aseveración de que la marihuana se hallaba a simple vista dentro del vehículo. Pero es interesante, en este sentido, la declaración del agente Mercado de que él no la vio, de primera intención, lo que resulta inconsistente con la alegación de los peticionarios de que se trata de un testimonio estereotipado para tratar de "*cuadrar*" un caso.

Tratándose, como hemos indicado, de un arresto válido que justificaba la ocupación del vehículo de motor de los peticionarios, sobre el cual éstos tenían una menor expectativa de intimidad, creemos que los agentes tenían la facultad de llevar a cabo un registro superficial del vehículo, precisamente para tratar de evitar la destrucción de la evidencia que habían observado. *Pueblo v. Cruz Torres*, 137 D.P.R. __, a la pág. 47.

El registro fue contemporáneo al arresto. Tampoco su alcance parece haber sido excesivo. Compárense, *Pueblo v. Camilo Meléndez*, **99 J.T.S. 96**; *Pueblo v. Yip Berríos*, **97 J.T.S. 14**; *Pueblo v. Malavé González*, 120 D.P.R. 470; *Pueblo v. Sosa Díaz*, 90 D.P.R. 622 (1964).

Según ha observado el Tribunal Supremo de Puerto Rico, el hecho de que una transacción de drogas hubiera ocurrido de día y en un lugar público, no es, de suyo, inverosímil, ni da base para rechazar un testimonio como "*estereotipado*". *Pueblo v. Muñoz, Colón y Ocasio*, 131 D.P.R. __, a la pág. 985; *Pueblo v. Rivera Rodríguez*, 123 D.P.R. 467, 481 (1989).

Declinamos substituir la apreciación de la prueba llevada a cabo por el Tribunal de Primera Instancia, quien escuchó a los testigos y quien gozaba, por lo tanto, de una mejor posición que este Tribunal para tomar una determinación sobre este particular. *Pueblo v. Acevedo Estrada*, **2000 J.T.S. 22,** a la pág. 573; *Pueblo v. Ortiz Rodríguez*, **99 J.T.S. 8,** a la pág. 517; *Pueblo v. Bonilla Romero*, 118 D.P.R. 92, 111 (1987).

Lo anterior, desde luego, no prejuzga en modo alguno, la evaluación de la prueba que en su día hubiera de llevar a cabo el Tribunal durante el juicio en su fondo del caso, en cuyo momento el Ministerio Público viene obligado a demostrar la culpabilidad de los acusados más allá de duda razonable, cumpliendo con el estándar más estricto requerido por el Art. II, Sección 10 de nuestra Constitución.

Por los fundamentos expresados, se deniega el auto de *certiorari* solicitado.

Lo pronunció el Tribunal y lo certifica la señora Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General