EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.* MANUEL CRUZ TORRES, demandado y recurrido.

*Número:* CE-94-97          *Resuelto:* 14 de septiembre de 1994

*Pedro A. Delgado Hernández, Procurador General*, abogado de El Pueblo; *Héctor Aníbal Castro Pérez*, abogado del demandado y recurrido.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Revisamos, a petición del Procurador General de Puerto Rico, una resolución emitida por el Tribunal Superior de Puerto Rico, Sala de Humacao, mediante la cual dicho foro judicial —*a pesar del hecho de que le dio entero crédito al testimonio de los agentes del orden público y de determinar que el arresto de la persona del aquí recurrido Manuel Cruz Torres fue legal*— resólvió que resultaba *ilegal e irrazonable* el registro de una motora perteneciente a dicha persona, y por ende la ocupación de la evidencia delictiva (droga narcótica) que en uno de los compartimentos de la misma fue encontrada. Dicho foro, en consecuencia, procedió a declarar *con lugar* la moción de supresión de evidencia que, a esos efectos, había radicado la representación legal del acusado recurrido Cruz Torres.

I

Con motivo de un plan de vigilancia, llevado a cabo por la Oficina de Humacao de la División de Drogas de la Policía de Puerto Rico, *respecto a varios "puntos de drogas" que alegadamente operaban en dicha región*, el agente Miguel Velázquez Torres se dirigió solo al pueblo de Yabucoa,

situándose en las cercanías de una "pizzería" conocida como "The King of Pizza". Pudo observar que frente a dicho negocio se encontraba una persona, quien resultó ser el acusado Cruz Torres, *parado al lado de una "motora" color roja y negra.*

Como a eso de las 5:30 P.M., llegó al lugar un sujeto, a quien describe. Dicho sujeto, luego de hablar con Cruz Torres, le entregó a éste un dinero; Cruz Torres, de inmediato, levantó el asiento de la motora, sacando del compartimento allí existente un "pote". Del interior de dicho "pote", Cruz Torres sacó una "bolsita plástica transparente, con una sustancia blanca en su interior" —Apéndice I, pág. 1— *tratándose, según la experiencia del agente Velázquez Torres, de la sustancia controlada conocida como "cocaína".* Terminada la referida "transacción", el sujeto se alejó del lugar, procediendo Cruz Torres a guardar el "pote" en el compartimento debajo del asiento de la motora. Velázquez Torres procedió a informar de lo ocurrido, por radio, a otros agentes que se encontraban cerca del área.

Aproximadamente quince (15) minutos más tarde, esto es, como a eso de las 5:45 P.M., llegó al lugar un *segundo* individuo, el cual describe, conduciendo un jeep "Renegade", color vino, la tablilla del cual Velázquez Torres no pudo anotar. Conforme el testimonio de dicho agente, sucedió, entonces, *prácticamente* lo mismo que en la ocasión anterior; esto es, una transacción o venta de alegada cocaína entre este segundo sujeto y el acusado Cruz Torres. Al retirarse el segundo sujeto en el jeep "Renegade" del lugar, el agente Velázquez Torres procedió a llamar, nuevamente por radio, a los otros compañeros que se encontraban por el área, con el propósito de que éstos interceptaran el referido vehículo, lo cual no se pudo realizar.

Posteriormente, llegó al lugar el agente Víctor Cruz Sánchez, junto a otros dos (2) agentes del orden público, con el propósito de ayudar a su compañero Velázquez Torres a arrestar al acusado Manuel Cruz Torres; persona

quien, al igual que la motora, había sido objeto de vigilancia directa e ininterrumpida de parte de Velázquez Torres. Conforme la declaración del agente Cruz Sánchez, luego de llegar al lugar, sucedió lo siguiente:

> Se baja del vehículo, estando el acusado en la entrada de la pizzería The King of Pizza y le indica que eran policías, que se detenga y lo pone *bajo arresto, le hace las advertencias de ley*, lo registra y le ocupó $760.00 y *posteriormente* va a la motora y busca en el área debajo del asiento y ocupa un pote color blanco, el cual tenía varias bolsitas plásticas transparentes, las cuales tenía un polvo blanco en su interior que según su criterio era cocaína.
>
> Confiscó la motora y llevó al acusado a la División de Drogas de Humacao, entregándole la evidencia al agente Rodríguez Dávila, quien practicó prueba de campo, *la cual dio positivo a cocaína.*
>
> A preguntas de la defensa el agente indicó que por lo menos le acompañaban 2 agentes al momento del arresto del acusado, que el mismo al momento de ser arrestado, *se encontraba como a 10 pies de la motora*, que luego del arresto del acusado se procedió registrar la motora, en adición indicó que no podía ver a través del pote ocupado, teniendo que abrirse el mismo para ver lo que había en su interior. (Énfasis suplido y en el original.) Apéndice I, pág. 3.

El tribunal de instancia, repetimos, resolvió que, aun cuando el arresto efectuado fue uno legal, el registro de la motora, sin orden judicial a esos efectos, fue uno ilegal e irrazonable por razón, en síntesis y en lo pertinente, de que en el presente caso no estaban presentes las circunstancias que nuestra jurisprudencia ha exigido para validar el registro del área al alcance inmediato del arrestado;[1] razón por la cual los agentes venían en la obligación de obtener una orden judicial para registrar la motora. Ello en vista del hecho de que, en palabras del foro de instancia, "el acusado se encontraba bajo arresto, habían por lo menos

---

[1] Esto es, con el propósito de " 'ocupar armas que puedan ser empuñadas y utilizadas por el acusado para agredir a los agentes del orden público o para intentar una fuga, y para ocupar evidencia que de otro modo el arrestado podría destruir' ". *Pueblo v. Malavé González*, 120 D.P.R. 470, 477 (1988), citando a *Pueblo v. Costoso Caballero*, 100 D.P.R. 147, 152–153 (1971).

[tres] (3) agentes en el área y la motora no estaba bajo su control inmediato". Apéndice I, pág. 4.

Inconforme, el Procurador General de Puerto Rico acudió ante este Tribunal —vía *certiorari*— en revisión de la referida resolución, imputándole al foro de instancia haber errado

> ... al resolver que el registro de la motora del acusado, tras su arresto, fue ilegal, con efecto de la supresión de los frutos de tal registro. Petición de *certiorari*, pág. 2.

Mediante Resolución de 15 de abril de 1994, le concedimos término al acusado recurrido para que mostrara causa "por la cual este Tribunal no debe expedir el auto solicitado y dictar Sentencia revocatoria de la resolución recurrida". Dicha parte ha comparecido. Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

## II

El Art. II, Sec. 10 de la Constitución del E.L.A., *en lo pertinente*, dispone que:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
>
> . . . . . . . .
>
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse. Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 299.

Por su parte, la Cuarta Enmienda de la Constitución federal establece que:

> No se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos y pertenencias, contra registros y allanamientos irrazonables, y no se expedirá ningún mandamiento, sino a virtud de causa probable, apoyado por juramento

o promesa, y que describa en detalle el lugar que ha de ser allanado, y las personas o cosas que han de ser detenidas o incautadas. Emda. IV, Const. EE.UU., L.P.R.A., Tomo 1, ed. 1982, pág. 186.

■ La jurisprudencia interpretativa de la garantía contra registros y allanamientos irrazonables ha hecho extensiva la misma tanto a registros, allanamientos e incautaciones de índole penal, como administrativa, y ha creado una presunción de invalidez, cuando éstos se llevan a cabo sin orden judicial previa. *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207 (1984). Esto es, ante la ausencia de orden judicial que autorice la intervención, el Ministerio Público viene en la obligación de demostrar la *existencia de circunstancias que hicieron innecesaria la obtención de la referida orden judicial.* Véanse: *Pueblo v. Vázquez Méndez*, 117 D.P.R. 170 (1986); *Pueblo v. Lebrón*, 108 D.P.R. 324 (1979).

A esos efectos, la jurisprudencia ha reconocido, entre otras situaciones, que la orden judicial previa resulta innecesaria: *cuando* la evidencia se encuentra a plena vista, *Pueblo v. Dolce*, 105 D.P.R. 422 (1976); *cuando* la evidencia es arrojada o abandonada, *Pueblo v. Lebrón*, ante; *cuando* la evidencia es obtenida en el transcurso de una persecución, *Pueblo v. Riscard*, 95 D.P.R. 405 (1967); *cuando* la evidencia es obtenida en un registro administrativo en una actividad altamente reglamentada por el Estado, *E.L.A. v. Coca Cola Bott. Co.*, ante, *y cuando* ha mediado consentimiento para el registro, *Pueblo v. Narváez Cruz*, 121 D.P.R. 429 (1988); *Pueblo v. Falú Martínez*, 116 D.P.R. 828 (1986).

■ Ahora bien, hemos resuelto, adicionalmente, que el registro —sin orden judicial que lo autorice— de la *persona* de un ciudadano que es *legalmente* arrestado, *y del área que está a su alcance inmediato*, es *completamente permisible* y, por ende, *legal y razonable.* Ello se *justifica* cuando dicho registro se hace con el propósito de evitar que la persona arrestada pueda utilizar armas para atacar a

los agentes del orden público, o para intentar una fuga, y para ocupar evidencia que, de otro modo, el arrestado podría destruir. *Pueblo v. Costoso Caballero*, 100 D.P.R. 147 (1971). En el citado caso de *Pueblo v. Costoso Caballero*, no obstante resolver que era legal y razonable el registro de una "carpeta o portapapeles" que el allí arrestado llevaba en sus manos, *advertimos* que:

> *No* es permisible un registro sin orden de allanamiento, aunque sea contemporáneo con un arresto válido, *de aquellos lugares y muebles de una casa que no están al alcance inmediato de la persona arrestada.* Así, al efectuarse un arresto válido *no* pueden registrarse sin orden de allanamiento escritorios, archivos, roperos y otros muebles, y closets y las habitaciones y otras partes de la vivienda o edificio en que se arresta al acusado. Esa búsqueda *que no tiene por propósito evitar los riesgos antes mencionados* (agresiones con armas, fuga, destrucción de evidencia) *no* son registros razonablemente hechos con motivo de un arresto *y por lo tanto* están proscritos por la Sec. 10 del Art. 2 de la Constitución de Puerto Rico y por la Enmienda IV de la Constitución de los Estados Unidos. (Énfasis suplido.) *Pueblo v. Costoso Caballero*, ante, pág. 153.

En fecha mucho más reciente, tuvimos la oportunidad de expresarnos nuevamente al respecto, en específico sobre el *registro minucioso y detenido* de un automóvil en la vía pública, cuyo conductor había sido originalmente detenido en relación a una supuesta infracción a la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 301 *et seq.* Nos referimos al caso de *Pueblo v. Malavé González*, 120 D.P.R. 470 (1988). El registro realizado en dicho caso fue sin orden judicial a esos efectos, efectuado por los agentes del orden público luego de que éstos hubieran legalmente arrestado en dicho lugar al conductor del vehículo por razón de haber observado, "a plena vista", sobre el asiento del mismo lo que aparentaba ser una sustancia controlada; efectuándose el registro minucioso del automóvil mientras el conductor del mismo se encontraba ya bajo custodia en la patrulla de la policía.

Luego de enfatizar que la Sec. 10, Art. II de nuestra

Constitución, ante, pág. 474, protege a la ciudadanía "no sólo contra registros ilegales, sino también contra registros irrazonables"; que la protección de la citada Sec. 10 "fue extendida específicamente a vehículos de motor", y que, debido a la diferencia conceptual y funcional entre una residencia y un automóvil, "los tribunales han concluido que la expectativa de intimidad es menor cuando se usa un automóvil", expresamos en *Pueblo v. Malavé González*, ante, pág. 473, que en esta clase de casos debemos "distinguir entre categorías de situaciones, adentrarnos en la *atmósfera total de cada caso* para hallar el significado preciso, *dentro de unas circunstancias específicas*, de un *concepto tan ilusivo y volátil como es el de la razonabilidad*". (Énfasis suplido.) Íd., págs. 473–474.

Después de examinar los hechos específicos del caso, *a la luz de la directriz antes mencionada*, resolvimos en *Pueblo v. Malavé González*, ante, que el registro minucioso que la policía efectuara del vehículo detenido había sido uno "irrazonable" por razón de que dicho vehículo, en el momento en que se registró, "ya no se encontraba bajo [el] control inmediato [de Malavé González] ni [éste] tenía acceso" al mismo. Íd., págs. 481–482. Siguiendo lo expresado en *Pueblo v. Costoso Caballero*, ante, adujimos que en la situación de hechos que presentaba el caso no existía razón alguna "para creer que la vida de los policías o de otras personas estuvieran en peligro, o que desapareciera la evidencia del delito de no efectuarse el registro sin orden". *Pueblo v. Malavé Gorizález*, ante, pág. 482. En consecuencia, confirmamos al tribunal de instancia, el cual había suprimido la evidencia delictiva que había sido ocupada como consecuencia del registro minucioso llevado a cabo.

III

Somos del criterio que los hechos del caso hoy ante nuestra consideración son *distinguibles* de los del antes ci-

tado caso *Pueblo v. Malavé González*. De hecho, somos de la opinión que existe una *abismal diferencia* entre los hechos de estos dos (2) casos. A diferencia del caso *Pueblo v. Malavé González*, en el presente caso se trata de la *incautación* de una evidencia delictiva *de cuya existencia los agentes del orden público tenían pleno conocimiento con anterioridad al momento en que ocupan la misma en la motora*. Dichos agentes, en adición, *tenían pleno conocimiento del lugar específico de la motora en donde se encontraba dicha evidencia delictiva*; motora y lugar específico *que habían estado, continua e ininterrumpidamente, bajo observación policiaca*. Esto es, *no* se trata aquí de un registro que se lleva a efecto por la *mera posibilidad* de encontrar evidencia delictiva; dicho de otra forma, *no* nos enfrentamos a un registro, tipo "fishing expedition", que se lleva a efecto "por lo que pueda aparecer". En el presente caso, *se tenía conocimiento y certeza de la existencia de la evidencia delictiva*, ya que la misma había estado a *"plena vista"* con anterioridad a ser depositada por el acusado en el compartimento de la motora; "vehículo de motor", repetimos, que en ningún momento estuvo fuera de la vista, y observación, de los agentes.

En conclusión, tratándose el presente caso de un registro, efectuado en la vía pública, de un vehículo de motor (motora) —el registro de los cuales es una *intrusión mucho menor*, en los derechos protegidos por la Cuarta Enmienda de la Constitución federal y de la Sec. 10 del Art. II de nuestra Constitución, que en casos del registro de la persona de un ciudadano y/o de la residencia de éste, *Pueblo v. Vargas Delgado*, 105 D.P.R. 335, 338 (1976); *Pueblo v. Malavé González*, ante— y de que en el caso ante nuestra consideración los agentes habían observado "a plena vista" la evidencia delictiva en controversia, que el lugar específico de la motora donde se "guardaba" la misma había estado, *continua e ininterrumpidamente*, bajo observación de dichos agentes, y que éstos tenían *la certeza de la existen-*

*cia* de la misma en dicho lugar, somos del criterio que la "atmósfera total" del caso y las "circunstancias específicas" del mismo demuestran que el registro, *tipo incautación,* que de la motora se realizara en el presente caso *fue uno razonable.* Véase *Pueblo v. Malavé González,* ante.

En consecuencia, *y por los fundamentos específicos antes expresados, procede expedir el auto de "certiorari" radicado por el Procurador General de Puerto Rico y se dictará sentencia revocatoria de la resolución emitida por la Sala de Humacao del Tribunal Superior de Puerto Rico en el presente caso, mediante la cual ordenó la supresión de la evidencia en controversia en el mismo; devolviéndose el caso al foro de instancia para procedimientos ulteriores compatibles con lo aquí expuesto y resuelto.*

La Juez Asociada Señora Naveira de Rodón emitió una opinión concurrente. El Juez Asociado Señor Alonso Alonso concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Negrón García no intervino.

— O —

Opinión concurrente emitida por la Juez Asociada Señora Naveira de Rodón.

Estamos conforme con la opinión del Tribunal, ya que entendemos que ésta se fundamenta en la doctrina de evidencia a plena vista. Debido a que dicha opinión, en parte, podría dar la impresión de que se está validando la incautación mediante la utilización de la doctrina de registro sin orden incidental al arresto, hemos decidido hacer estas breves expresiones.

La Sec. 10 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, así como la Cuarta Enmienda de la Constitución de Estados Unidos de América, garantizan la protección de las personas, sus casas, papeles y efectos contra registros, allanamientos e incautaciones irrazonables. Ahora bien, esta garantía tendrá

efecto sobre *objetos* y *lugares* sólo si están protegidos por un interés individual fundado en una expectativa legítima a la intimidad. *Katz v. United States*, 389 U.S. 347 (1967); *Pueblo v. Lebrón*, 108 D.P.R. 324, 332 (1979); *Pueblo v. Luzón*, 113 D.P.R. 315, 326 (1982); *E.L.A. v. P.R. Tel. Co.*, 114 D.P.R. 394, 402 (1983); *Pueblo v. Pérez Pérez*, 115 D.P.R. 827, 830 (1984). Lo crucial y decisivo es que, bajo las circunstancias del caso, sea razonable tener tal expectativa, en el sentido de lo que es socialmente justificable. E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. 1, Sec. 6.17, pág. 434. Por tal razón, lo que una persona expone al público, en mayor o menor grado, determinará su interés constitucional sobre el objeto, y, por lo tanto, el alcance de la protección. O.E. Resumil de Sanfilippo, *Derecho Procesal Penal*, New Hampshire, Ed. Equity, 1990, T. 1, pág. 205. La privacidad no sigue a los objetos como una sombra. Termina una vez que la persona los expone voluntariamente a la vista y conocimiento del público. *Pueblo v. Domínguez Fraguada*, 105 D.P.R. 537, 544 (1977). De ahí que los objetos a plena vista o percepción carecen de protección constitucional. *Pueblo v. Dolce*, 105 D.P.R. 422, 435–436 (1976); *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770, 779 (1982).

La norma general, bajo la Constitución del Estado Libre Asociado de Puerto Rico y la Cuarta Enmienda de la Constitución de Estados Unidos es que no existe una protección constitucional contra la inspección de objetos que están a la plena percepción de los agentes de la Policía, siempre que la presencia de los agentes en el lugar esté justificada. Para incautarse del objeto, la incautabilidad del mismo debe surgir de la percepción de éste, y no de su registro. También hay que justificar el acceso al lugar de la incautación. Chiesa, *op. cit.*, pág. 434.

Los requisitos para la aplicación de la doctrina en Puerto Rico, según los establecimos en *Pueblo v. Dolce*, supra, son los siguientes:

1. El artículo debe haberse descubierto por estar a plena vista y no en el curso o por razón de un registro.

2. El agente que observe la prueba debe haber tenido derecho previo a estar en la posición desde la cual podía verse el artículo.

3. El objeto debe descubrirse inadvertidamente.

4. La naturaleza delictiva del objeto debe surgir de la simple observación.

El tercer requisito mencionado en *Pueblo v. Dolce*, supra, fue abandonado por la Corte Suprema federal en *Horton v. California*, 496 U.S. 128 (1990). En dicho caso se llegó a la conclusión de que el carácter inadvertido del descubrimiento o percepción del objeto no es esencial. Lo que sí es esencial es justificar la presencia del agente en el lugar. La doctrina de la evidencia a plena vista o percepción en la jurisdicción federal está resumida en el siguiente párrafo:

> ... [E]s un requisito esencial para la incautación válida de evidencia incriminatoria sin orden judicial, que el agente no violara la Enmienda Cuarta al llegar a colocarse en el lugar desde el cual la evidencia pudiera ser percibida a plena vista. Hay, además, dos condiciones adicionales que deben ser satisfechas para justificar la incautación sin orden. En primer lugar, no sólo deben estar a plena vista los objetos, sino que su carácter incriminatorio tiene que ser también inmediatamente aparente .... En segundo lugar, no sólo se requiere que el agente esté legalmente en el lugar o posición desde el cual el objeto queda a plena vista, sino que además se requiere que el agente tenga acceso legal al objeto mismo. Traducción del Profesor E.L. Chiesa, *op. cit.*, págs. 438–439, citando a *Horton v. California*, supra, pág. 2308.

Al armonizar los requisitos establecidos tanto en la jurisdicción federal como en la nuestra, encontramos que éstos se cumplen en el caso ante nuestra consideración.

En primer lugar, el artículo —cocaína— fue descubierto por estar a plena vista. En segundo lugar, el agente tenía

derecho previo a estar en la posición mediante la cual observó el objeto a plena vista, ya que estaba haciendo uso de su libertad de movimiento en un lugar público, mientras realizaba una investigación relacionada con el trasiego de drogas. *Pueblo v. Corraliza Collazo*, 121 D.P.R. 244, 247 (1988). En cuanto al tercer requisito establecido en *Pueblo v. Dolce*, supra, ya dijimos que éste ha sido abandonado por la jurisprudencia federal, acción que consideramos atinada. Con relación al último requisito, la naturaleza delictiva del objeto surgió, con meridiana claridad, de la simple observación del agente, el cual, por su experiencia en la investigación del trasiego de sustancias controladas, percibió, a simple vista, que se trataba de cocaína.

En relación con el derecho o justificación legal para que el agente buscara en el asiento de la motora con el objeto de extraer el "pote" que contenía la cocaína, coincidimos con la opinión mayoritaria de que el registro, tipo incautación, que se realizó de la motora fue razonable. Ello por razón de que los agentes habían observado a plena vista la evidencia delictiva en controversia y el lugar donde fue guardada había estado continua e ininterrumpidamente bajo la observación de los agentes, teniendo éstos la certeza de su existencia en dicho lugar y que, además, se trataba de un registro de un vehículo de motor, en los cuales existe una menor expectativa razonable a la intimidad, comparada con el hogar y otros lugares. *Pueblo v. Malavé González*, 120 D.P.R. 470 (1988). También resulta significativo que la incautación se realizó dentro de un tiempo relativamente corto desde que ocurrió la observación de las transacciones, estando la evidencia a plena vista, y el momento del arresto del acusado. Cabe señalar, por último, que el peticionario, en *dos* (2) ocasiones, llevó a cabo las transacciones de drogas, a plena vista, dándole la oportunidad al agente de observar claramente dichas acciones. Éste prácticamente estaba "anunciando" con sus actuacio-

nes la actividad delictiva que llevaba a cabo. Nos parece que, bajo esas circunstancias, el peticionario no tenía una expectativa real de intimidad y hubiese sido un tanto artificial confiscar la motora para luego registrarla para fines de inventario.

Por todo lo antes expuesto, concurrimos con la opinión que hoy emite la mayoría.