# 2002 DTA 104

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL V DE PONCE Y AIBONITO**

EL PUEBLO DE PUERTO RICO
Apelado

v.

ORLANDO L. LUGO MEDINA
Apelante

Núm. KLAN-02-00116

San Juan, Puerto Rico, a 6 de junio de 2002

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Aponte Jiménez y la Juez Pabón Charneco

Pabón Charneco, Jueza Ponente

### TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos Orlando L. Lugo Medina, en adelante, el apelante, solicitando la revocación de una Sentencia emitida por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Juana Díaz. Mediante dicho dictamen, el tribunal *a quo* lo encontró culpable de infringir varios artículos de la Ley Núm. 22 de 7 de enero de 2000, según enmendada, conocida como *"Ley de Vehículos y Tránsito de Puerto Rico"*, 9 L.P.R.A. sec. 5001, *et seq.*

Por los fundamentos que expondremos a continuación, se confirma la Sentencia apelada.

### I

Conforme surge del recurso ante nuestra consideración, el 11 de mayo de 2001, fueron presentadas denuncias contra el apelante. En las mismas, se le imputó infracciones a los Arts. 7.11 ■ y 10.22 ■ de la Ley Núm. 22, *supra*, por hechos acaecidos el 3 de mayo de 2001. Las denuncias leen como sigue:

*"Art. 7.11*

***ORLANDO L. LUGO MEDINA**, allá en la Carr. 52 Km. 86.1, dentro de la jurisdicción del Tribunal Distrito de P.R., Sala de Juana Díaz, ilegal, voluntaria, maliciosa y criminalmente conducía el vehículo marca HYNDAI mod. TIBURON, año 1997, tab. CTH-393 por la vía pública, estando dicho acusado bajo los efectos de bebidas embriagantes.*

*Luego de hechas las advertencias de rigor según dispone la ley, éste no accedió a someterse a los análisis prescritos por Ley, Sangre o Aliento.*

*Art. 10.22*

*ORLANDO L. LUGO MEDINA, ALLA EN LA CARR. 52 KM 86.1, DENTRO DE LA JURISDICCION DEL DISTRITO DE PUERTO RICO, SALA DE JUANA DIAZ, ILEGAL, VOLUNTARIA, MALICIOSA Y CRIMINALMENTE CONDUCIA EL VEHÍCULO MARCA HYNDAI MOD. TIBURON, AÑO 1997, TAB. CTH-393 POR LA VIA PUBLICA, ESTE NO SE DETUVO CUANDO SE LE ORDENO DETENERSE CON UNA PATRULLA CON BIOMBO SIRENA Y DEBIDAMENTE ROTULADA. HECHO CONTRARIO A LA LEY."*

En adición a las denuncias arriba transcritas le fueron expedidos cuatro (4) boletos administrativos por violación a la Ley Núm. 22, *supra.* ▮▮

Luego de los trámites procesales de rigor, se celebró el juicio. Según surge de la exposición estipulada de la prueba, testificaron los Agentes José R. Alvarado Cintrón, Edgardo Alvarado, Julio Pérez Tirado, así como la señora Julia Vega, esposa del apelante y éste.

El Agente José R. Alvarado Cintrón, en adelante, el Agente Alvarado Cintrón, testificó que lleva cinco (5) años en la Policía de Puerto Rico, dos (2) de los cuales se encuentra asignado a alcohol y carreras clandestinas. Declaró que el día de los hechos estaba prestando servicio en compañía del Agente Edgardo Alvarado. Tenían un radar en la patrulla y estaban haciendo ronda preventiva de Santa Isabel a Ponce cuando se acercó un automóvil que marcó en el radar 112 mph. Testificó que iniciaron la marcha antes de que llegase el vehículo para evitar que se perdiese. Le tocaron la sirena y continuaron la marcha a la misma velocidad de 112 mph. El apelante hizo cambio de carril indebido, hizo uso del paseo para pasar a otros automóviles y se salió en el km. 99.8. El Agente Alvarado Cintrón testificó que lograron alcanzar al vehículo cuando disminuyó la velocidad a fin de pagar el peaje. Declaró que en ningún momento hizo señales de detenerse, por lo que creyeron que era un vehículo hurtado. Luego de detenerlo, el apelante sacó una identificación de la Policía de Puerto Rico y se identificó como Sargento, adscrito a la unidad marítima de Salinas. Se le solicitaron los documentos de rigor. A preguntas del Ministerio Público, el agente señaló que el apelante se tardó unos cuantos minutos en conseguir los documentos. Testificó que el apelante estaba negativo todo el tiempo haciendo alusión a su rango dentro de la Policía de Puerto Rico. Al llegar el Sargento Pérez se le preguntó al apelante si tenía arma, lo que contestó en la negativa, por una aparente Ley Núm. 54.

El agente testificó que estaban presentes los agentes Edgardo Alvarado, José Báez y Justo Aponte, los últimos dos de otra unidad. Posteriormente, se acercó al lugar de los hechos la esposa del apelante. El agente declaró que al entregarle los boletos observó que tenía los ojos rojizos, la piel sudorosa y un fuerte olor a licor y la mayor parte del tiempo se mantuvo recostado, apoyándose en la capota del vehículo, ya que no podía mantenerse en pie. El agente le entregó los boletos y le hizo las advertencias de rigor de que había una presunción de que estaba manejando bajo los efectos de bebidas embriagantes. Se le preguntó si aceptaba hacerse la prueba inicial de aliento, el *"alcosensor"*. Declaró que el apelante le indicó que no se sometería a la prueba, que lo esposasen y lo llevasen ante un magistrado. Lo condujeron a la división de tránsito y se comunicaron con el fiscal. Este último dio instrucciones de que prestasen la declaración jurada para levantar el expediente y someterlo esa noche.

En el contrainterrogatorio, el agente, a preguntas sobre el momento en que se identificó al apelante y cuando le mostró la lectura del radar a éste, declaró que la lectura se había borrado, ya que estaba al lado de la sirena y al activarla, por accidente, se borró, por lo que no pudo verla el apelante. Que el iba a 112 mph y tenía sirena y biombo encendido. Que le hacían cambio de luces y subía y bajaba la velocidad. Que no todo el tiempo iba a 112mph, pero que se mantuvo a alta velocidad. Se le preguntó si 55 mph era alta velocidad y contestó en la negativa. Se le preguntó el tipo de vehículo, contestándosele que era un Hyundai. Que el apelante iba a toda velocidad y cogió por el paseo, que hizo un cambio de carril indebido a fin de evitar chocar con otros vehículos. De no haberse realizado este cambio de carril, hubiera impactado a otros vehículos que transitaban por la autopista.

A preguntas de la defensa testificó que el apelante solicitó se le llevara frente a un magistrado. Que estaba en aparente estado de embriaguez. El magistrado preguntó si la velocidad fue registrada, respondiendo en la afirmativa el agente, ya que anteriormente habían realizado una intervención con un ciudadano y él vio la velocidad y que había un boleto al respecto. La defensa preguntó si el apelante hizo las maniobras a 112 mph, a lo que el agente respondió que la velocidad de 112 mph se grabó y que luego continuó la marcha a exceso de velocidad.

· El Agente Edgardo Alvarado testificó que llevaba en el área de tránsito tres años y medio y que ha intervenido con muchas personas a exceso de velocidad. Estaba trabajando con el Agente Alvarado Cintrón en el km. 86 en una patrulla debidamente rotulada con biombo y sirena. Testificó que le computaron la velocidad a un vehículo a 112 mph. Iniciaron la marcha antes de que llegase el vehículo a ellos, ya que consideraba que el vehículo no se iba a detener y de no hacerlo así se iba a perder, ya que antes había pasado. Declaró que. el compañero le hizo cambio de luces. A preguntas del fiscal, declaró que el apelante conducía muy negligentemente. Testificó que pasó a 112 mph, hizo un cambio indebido de carril, usó el paseo para pasar, se movía entre vehículos, no guardaba distancia con los vehículos de al frente y fue en la rampa de peaje de Juana Díaz que lograron alcanzarlo, atravesándole la patrulla al frente a fin de evitar que continuara. Declaró que el Agente Alvarado Cintrón le solicitó los documentos y· el apelante se identificó como agente de la Policía. Testificó que el apelante estaba sudoroso, ojos rojizos y en aparente estado de embriaguez. Al leérsele las advertencias y solicitársele se sometiera a una prueba de campo, se negó a ello, pidiendo fuera llevado a un magistrado. Se llamó a ver si había un juez y ver si se llevaba a la Sala de Investigaciones del Tribunal de Ponce. Esto no se hizo, ya que llegó el licenciado Martínez y manifestó que en las condiciones en que estaba el apelante no podía ver a un juez.

En el contrainterrogatorio señaló que el apelante no siempre iba a la misma velocidad y que llamó a la comandancia para señalar que había una persecución.

· Por su parte, el Agente Julio Pérez Tirado declaró que como supervisor de autopistas ha intervenido en cuatro (4) o cinco (5) casos. Testificó que la noche de los hechos recibió una llamada del Agente Alvarado sobre un Hyundai rojo y que lo llamaron para que lo detuviese y se averiguara a quién pertenecía el mismo. Que lo habían detenido en la rampa y el apelante se había identificado como Policía. Al llegar al lugar observó que el apelante tenía los ojos rojizos y en aparente estado de embriaguez.

El próximo testigo fue el Agente Pedro Vázquez, quien declaró que la noche de los hechos estaba trabajando en la radio de la Comandancia. Conforme al reglamento, cuando hay intervenciones, tienen que notificárselo y él no recibió notificación alguna de los agentes. Declaró que si hubo persecución, él no se enteró, ya que no fue notificado.

La siguiente testigo fue la señora Julia Vega, esposa del apelante. Declaró que llegó con posterioridad al ·arresto y que el apelante no se veía borracho y se veía muy bien y tenía los ojos rojos porque siempre los tiene así. Que en todo momento se veía bien y que aparentaba estar en buena condición.

El próximo testigo fue el apelante, quien declaró que llevaba veintisiete (27) años en la Policía de Puerto Rico. Testificó que iba por la carretera a velocidad normal y que al llegar al peaje de Juana Díaz lo detuvieron. El agente Alvarado le pidió sus documentos y les dijo que estaban equivocados. Declaró que el agente le informó que le iban a dar un boleto de $500.00 por ir a exceso de velocidad a 112 mph. El apelante solicitó le mostraran la lectura del radar y se le informó que se había borrado. Testificó que le indicó al agente que estaba equivocado que no podía denunciarlo, toda vez que la ley requería se le mostrase la lectura. Que se le informó que estaba arrestado al comenzar la discusión. Declaró que no se sometió a la prueba, toda vez que estaban violando la ley. El fiscal le preguntó qué acción tomaba si una patrulla con el biombo encendido le hacía señales. Contestó que se detenía de inmediato y que la noche de los hechos no se detuvo, ya que en ningún momento vio patrulla alguna siguiéndolo. Que cuando vio una patrulla fue que se detuvo a pagar el peaje. El fiscal le preguntó que si el iba tan ligero que no les vio y cuando venían tocando la sirena detrás de él. Respondió en la negativa. Declaró que cuando los vio fue en la rampa, que si hubiese venido a esa velocidad de 112 mph se hubieran matado todos, ya que es un arco. Declaró que si alguien dijese que venía borracho estaría mintiendo, que si estaba sudoroso era por haber estado trabajando y que sus ojos rojizos son así en forma normal.

Mediante Sentencia dictada, el apelante fue encontrado culpable de negarse a someterse a la prueba de alcohol, de no detenerse ante la señal del agente del orden público y de pasar indebidamente por la derecha, a saber violaciones a los Arts. 7.11, 10.22 y 6.04 de la Ley Núm. 22, *supra*. El magistrado lo encontró inocente de no guardar distancia entre vehículos, de cambiar de carril indebidamente y de conducir a velocidad exagerada. Insatisfecho presentó reconsideración la cual fue denegada.

Inconforme con la Sentencia emitida, recurre a este Tribunal. El 16 de mayo de 2002, presentó su alegato el Procurador General. Contando con el beneficio de ambas comparecencias y la exposición narrativa estipulada de la prueba, procedemos a resolver.

## II

En su recurso, el apelante plantea que incidió el Tribunal de Primera Instancia al admitir prueba producto de una intervención ilegal al actuar los agentes sin motivos fundados; al declararlo culpable con pruebas producto de una intervención ilegal; al aceptar prueba no creíble de actos imposibles de realizar por el apelante al alegarse viajaba 110 m.p.h. por el paseo; y al declararlo culpable con prueba insuficiente para sustentar la convicción.

## III

El Art. 7.09 de la Ley Núm. 22, *supra*, establece que cualquier agente del orden público o funcionario debidamente autorizado por ley deberá requerir de cualquier conductor que se someta a cualesquiera de los análisis químicos establecidos después de haberle detenido si tiene motivos fundados para creer que dicha persona conducía o hacía funcionar un vehículo bajo los efectos de bebidas embriagantes, drogas o sustancias controladas o cuando habiendo sido detenido por razón de una posible infracción a la ley o a las leyes de servicio público y sus reglamentos, existieren motivos fundados para creer que conducía o hacía funcionar un vehículo bajo los efectos de bebidas embriagantes al tiempo de su detención.

Por otro lado, el primer párrafo de dicha disposición establece que *"toda persona que transite por las vías públicas de Puerto Rico conduciendo un vehículo de motor habrá prestado su consentimiento a someterse a un análisis químico o físico de su sangre, aliento o de cualquier sustancia de su cuerpo, para los fines que se expresan en esta sección, así como a una prueba inicial del aliento a ser practicada en el lugar de la detención por el agente del orden público o cualquier otro funcionario autorizado por ley"*. El inciso (a) dispone que se entenderá que dicho consentimiento queda prestado para cualesquiera de los análisis estatuidos y que la persona que fuere requerida se someterá al análisis de su selección. 9 L.P.R.A. sec. 5209(a).

## IV

De ordinario, se prohíbe arrestar a una persona sin previa orden judicial fundada en una determinación de causa probable. No obstante, la Regla 11(a) de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 11, dispone que es válido un arresto sin orden judicial por un funcionario público cuando éste tuviere motivos fundados para creer que la persona a ser arrestada ha cometido un delito en su presencia. La garantía constitucional citada, se extiende a intervenciones con vehículos de motor. *Pueblo v. Camilo Meléndez*, 148 D. P.R. ___ (1999), **99 J.T.S. 96**; *Pueblo v. Yip Berríos*, 142 D.P.R. 386, 399 (1997); *Pueblo v. Cruz Torres*, 137 D.P.R. 42, 48-49 (1994).

El Tribunal Supremo de Puerto Rico ha señalado que la frase *"motivos fundados"* es sinónima de la de *"causa probable"* que contiene el Art. II, Sec. 10 de la Constitución de Puerto Rico. *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762 (1991). La *"causa probable"* se determina a base de criterios de probabilidad y razonabilidad, y es doctrina firmemente establecida en nuestra jurisdicción que esa determinación tiene que basarse en hechos y no en meras sospechas. *Id.; Pueblo v. Rey Marrero*, 109 D.P.R. 739 (1981).

A tales efectos, el concepto de motivos fundados se ha definido como aquella información y conocimiento

que lleven a una persona ordinaria y prudente a creer que el arrestado ha cometido un delito, independientemente de que luego se establezca o no la comisión del delito, razón por la cual se hace necesaria la evaluación de las circunstancias específicas de cada caso en particular. *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762 (1991); *Pueblo v. Martínez Torres*, 120 D.P.R. 496, 504 (1988).

La existencia de motivos fundados para el arresto es el resultado de una rápida evaluación de circunstancias, en la cual el agente de la Policía llega a la conclusión de que la persona ha cometido un delito en su presencia. Chiesa, Ernesto. *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Ed. Forum, Vol. 1. Asimismo, la apreciación del agente no se limita a lo que puedan captar sus sentidos, sino que se toma en consideración su experiencia. *Pueblo v. Cabrera*, 92 D.P.R. 70 (1965).

Motivos fundados existen cuando el agente personalmente observa una actuación que es delictiva. *Pueblo v. Colón Bernier*, 148 D.P.R. ___ (1999), **99 J.T.S. 64.** Ahora bien, tener meras sospechas no basta, aunque tampoco es necesario convencer al juez, fuera de toda duda razonable, de que se está violando la ley, ni establecer que la ofensa imputada fue cometida en realidad. Fundamental es que el agente que efectúa el arresto y allanamiento sin orden tenga -al momento de hacerlo- base razonable o motivos fundados para creer que se estaba violando la ley. *Pueblo v. Serrano, Serra*, 148 D.P.R. ___ (1999), **99 J.T.S. 69.**

## V

Dentro del marco jurídico antes enunciado, procedamos a resolver la controversia de autos. Discutiremos los señalamientos de error en conjunto por estar íntimamente relacionados.

En su escrito, el apelante alega que la prueba, destinada a establecer los motivos fundados que justificaron que los oficiales del orden público intervinieran con el apelante, es increíble, ilusoria y absurda.

A fin de sustentar su posición, resume el testimonio de los agentes de la siguiente manera:

*"[v]iajaba el apelante de Santa Isabel a Juana Díaz por la Autopista Luis A. Ferré, cuando los agentes detectan en el radar que éste viajaba en un automóvil Hyundai a una velocidad de 112 mph. Pero no sólo eso, se trata de una [sic] agente del orden público, un sargento de la policía que además de viajar a esa velocidad, no guardaba distancia entre vehículos, zigzagueaba entre carriles para rebasar otros vehículos, utilizaba el paseo para pasar y adelantarse a los demás y no tuvo accidente alguno en todas esas maniobras a tal velocidad. No se detuvo ante las señales de la policía, ni escuchó la sirena o quizás hizo caso omiso y continuó su marcha sin detenerse. Pero lo más increíble, es que al detenerse en el peaje de Juana Díaz para pagar y le atraviesan las patrullas al frente para evitar se fuese, éste no podía mantenerse de pie debido a lo ebrio que estaba y tenía que apoyarse en el vehículo para poder estar de pie."*

Entendemos que no le asiste la razón al apelante, toda vez, que en el caso de autos, los agentes del orden público intervinieron con el apelante por varias infracciones a la Ley Núm. 22, *supra*. Conforme los testimonios vertidos en el juicio, el apelante estaba conduciendo el vehículo de motor en abierta violación a las leyes de tránsito. Durante la persecución, entre otros extremos, el apelante hizo cambio de carril indebido e hizo uso del paseo para pasar a otros automóviles. No se detuvo inmediatamente a pesar de los requerimientos de los agentes. El Agente Alvarado Cintrón testificó que lograron alcanzar al vehículo cuando disminuyó la velocidad a fin de pagar el peaje. Declaró que en ningún momento hizo señales de detenerse, por lo que creyeron que era un vehículo hurtado.

Al analizar si existían motivos fundados para requerir que el apelante se sometiera a la prueba de alcohol inicial, el Tribunal de Primera Instancia tenía que examinar las circunstancias específicas de la situación presentada a fin de determinar si los agentes del orden público actuaron como personas ordinarias y prudentes. Examinados tales hechos podemos concluir que, efectivamente, los agentes podían razonablemente creer que el

apelante se encontraba bajo los efectos de bebidas embriagantes. Veamos.

Una vez detenido y observado el comportamiento del apelante, los agentes testificaron que éste tenía los ojos rojizos y la piel sudorosa, así como la mayor parte del tiempo se mantuvo recostado, apoyándose en la capota del vehículo. A su vez, al solicitarle los documentos y conversar con él, el Agente Alvarado Cintrón sintió un fuerte olor a licor.

De conformidad, pues, con lo antes señalado, no tenemos duda que los agentes del orden público que intervinieron con el apelante tenían motivos fundados para creer que éste estaba conduciendo el vehículo de motor bajo los efectos de bebidas embriagantes. Bajo esta premisa procedía requerirle que se efectuase la prueba de aliento, conforme se realizó.

Por otro lado, el apelante señala que fue privado ilegalmente de su libertad, y que debió haberse usado el sistema de denuncia y citación simultánea que provee la Ley Núm. 22, *supra*. El Art. 17.01 ▪ del estatuto establece y autoriza la denuncia y citación por infracciones de las leyes, reglamentos a ordenanzas municipales sobre tránsito, excepto lo dispuesto en el Art. 17.05 ▪ de la ley.

A su vez, el Art. 7.04 de la ley dispone que el miembro de la Policía *"que haya intervenido con la persona expedirá una citación a una vista de determinación de causa probable para su arresto, y no se le permitirá que continúe conduciendo"*. Sin embargo, el Art. 17.05, *supra*, establece que *"el sistema de denuncia y citación simultáneas aquí establecido no será aplicable a la persona que conduzca un vehículo de motor en los siguientes casos... (b) [b]ajo la influencia de bebidas embriagantes..."*. Asimismo, el Art. 17.06 dispone que *"las disposiciones de este subcapítulo no privarán a ninguna persona o agente del orden público del derecho de someter una denuncia de forma ordinaria"*.

Una evaluación de la situación de autos revela que los agentes actuaron conforme lo establece la Ley Núm. 22, *supra*, al no permitir que el apelante continuara conduciendo el vehículo de motor cuando se presumía que estaba bajo los efectos de bebidas embriagantes así como acceder, en cuanto a la petición de llevarlo frente a un magistrado, situación que no se dio, por requerimiento del representante legal del apelante, conforme el testimonio del agente. Por otro lado, toda vez que los agentes tenían motivos fundados para creer que el apelante había cometido un delito, en su presencia, podían arrestar al mismo. Dicha actuación no constituye una violación a los derechos constitucionales del apelante.

Por ultimo, el apelante, en su escrito, argumenta que lo testificado por los agentes no es creíble. Es norma reiterada que al revisar cuestiones de hecho en convicciones criminales, la apreciación de la prueba corresponde al foro sentenciador y los tribunales apelativos sólo intervendrán con ella cuando exista error manifiesto, pasión, prejuicio o parcialidad. *Pueblo v. Acevedo Estrada*, ___ D.P.R. ___ (2000), **2000 J.T.S. 22**; *Pueblo v. Maisonave*, 129 D.P.R. 49 (1991). Tampoco se debe intervenir con la adjudicación de credibilidad que haya hecho el juzgador de hechos, *"ello es particularmente cierto cuando están en cuestión elementos altamente subjetivos... En tales casos, el juzgador de los hechos, que oyó y vio declarar a los testigos y apreció su demeanor, es quien está indudablemente en la mejor posición para aquilatar la prueba testifical desfilada"*. *Flores v. Soc. de Gananciales*, 146 D.P.R. 45 (1998); *López Vicil v. ITT Intermedia*, 142 D.P.R. 857 (1997).

En el presente caso, no existe razón alguna para que intervengamos con la adjudicación de credibilidad que le mereció la prueba testifical al juzgador. Un análisis de la prueba presentada en el juicio, no causa insatisfacción o intranquilidad de conciencia que hace se estremezca el sentido básico de justicia. *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986).

## VI

Por los fundamentos arriba esbozados, se confirma la Sentencia apelada.

Así lo acordó y manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2002 DTA 104

**1.** Procedimiento cuando la persona arrestada se negare a someterse al análisis químico o físico. 9 L.P.R.A. sec. 5210.

**2.** Autoridad de agentes del orden público. 9 L.P.R.A. sec. 5302.

**3.** Boleto número 13901500 por violación al Art. 5.02 de la Ley Núm. 22, *supra*, 9 L.P.R.A. sec. 5122, por viajar a 112 mph, con multa de $300.00.

Boleto número 13903376 por violación al Art. 6.04 de la Ley Núm. 22, *supra*, 9 L.P.R.A. sec. 5154, por pasar por la derecha indebidamente, con multa de $25.00.

Boleto número 13903377 por violación al Art. 6.06 de la Ley Núm. 22, *supra*, 9 L.P.R.A. sec. 5156, por hacer cambio de carril indebido, con multa de $25.00.

Boleto número 13903378 por violación al Art. 10.10 de la Ley Núm. 22, *supra*, 9 L.P.R.A. sec. 5290, por no guardar distancia con otros vehículos, con multa de $50.00.

**4.** 9 L.P.R.A. sec. 5501.

**5.** 9 L.P.R.A. sec. 5505.