# 2002 DTA 133

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL VII DE CAROLINA-FAJARDO

EL PUEBLO DE PUERTO RICO
Recurrido

v.

WILFREDO REYES SERRANO Y HECTOR DE JESUS LANDAN
Peticionarios

Núm. KLCE-02-00540

San Juan, Puerto Rico, hoy 29 de agosto de 2002

Panel integrado por su Presidente Juez Miranda De Hostos
y los Jueces Hernández Torres y Martínez Torres

Hernández Torres, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Comparece ante nos Wilfredo Reyes Serrano y Héctor de Jesús Landán (en adelante los peticionarios) y nos solicitan la revisión la resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 23 de enero de 2002, notificada y archivada en autos el 3 de marzo de 2002. Mediante la misma, el tribunal de instancia declaró NO HA LUGAR la moción de supresión de evidencia presentada por los peticionarios el 4 de enero de 2002.

Luego de estudiados los hechos y el derecho aplicable, denegamos la expedición del recurso de *certiorari*.

### I

Según el testimonio de los agentes de la División de Operaciones Especiales de la Sección de Investigaciones Confidenciales, Víctor James Salgado Betancourt (Salgado Betancourt) y Rafael Rosa Suárez (Rosa Suárez), el 4 de marzo de 2001, éstos alegadamente recibieron una confidencia relacionada a que en una residencia del Sector La Loma, carretera núm. 8860, del Municipio de Carolina, se estaban llevando a cabo transacciones de droga, por lo que se dirigieron al lugar a investigar. Cuando se dirigían hacia el lugar indicado los agentes alegaron que vieron a dos individuos en el balcón de una residencia, uno de los cuales (Reyes Serrano) hablaba con una mujer que se encontraba en un vehículo y a quince pies de éstos otro (De Jesús · Landán), que pillaba su camisa con la quijada, mientras acomodaba en su cintura una bolsa tipo *"zip-loc"* grande conteniendo aparente picadura de marihuana. Los agentes procedieron a identificarse como tales y ambos peticionarios emprendieron carrera. El agente Rosa Suárez va tras De Jesús Landán y lo arresta. Alegó el agente que Reyes Serrano por su parte, extrajo de la cintura un arma negra y salió corriendo hacia el interior de la residencia donde ocupó en una habitación armas, drogas y parafernalia.

Todo el incidente anteriormente narrado, culminó con el arresto de los peticionarios, de la esposa de De Jesús Landán, que se encontraba de visita en la residencia con su hijo recién nacido, y del tío de Reyes Serrano, quien se encontraba en el interior de la residencia.

Posteriormente, Reyes Serrano y De Jesús Landán prestaron ante el Fiscal Rodolfo Ocasio Bravo una declaración jurada en donde aceptaron la comisión de los hechos, pero manifestaron que ni la esposa de De Jesús Landán ni el tío de Serrano Reyes tenían conocimiento alguno de la existencia de las armas y las sustancias controladas almacenadas en la residencia.

Ante esto se presentaron las correspondientes acusaciones el 28 de agosto de 2001. El 4 de enero de 2002, los peticionarios solicitaron mediante moción la supresión de la evidencia incautada. Alegaron en la moción que las admisiones ofrecidas en la declaración jurada fueron involuntarias y se debieron a la presión ejercida por los agentes, por lo que la incautación de la evidencia y el arresto fue ilegal, toda vez que se efectuó sin la correspondiente orden judicial.

El 23 de enero de 2002, fue celebrada la vista en torno a la moción de supresión de evidencia. El peticionario Reyes Serrano prestó una declaración en donde alegó que los agentes se personaron a su residencia y entraron por la fuerza donde finalmente ocuparon la evidencia. Alegó que al momento de llegar los agentes, De Jesús Landán hablaba con su esposa y él estaba recostado del muro de la residencia. Señaló además que no estaba armado y cuando los agentes llegaron entró a la casa y éstos procedieron a entrar por la fuerza. Relató que cuando los llevaban en la patrulla hacia el cuartel, los agentes le dijeron que si ofrecían su versión de los hechos dejarían ir a la esposa de De Jesús Landán y a su tío.

Por el Ministerio Público prestaron testimonio los agentes Salgado Betancourt y Rosa Suárez, además del fiscal Ocasio Bravo, quien tomó las declaraciones de los peticionarios. Este último declaró que la confesión no fue tomada en presencia de los agentes y que los peticionarios se encontraban tranquilos y no presentaban

ninguna evidencia de que habían sido intimidados o golpeados.

Ese mismo día, luego de evaluar la prueba ante sí, el tribunal de instancia declaró no ha lugar la supresión de la evidencia.

Los peticionarios, inconformes con el dictamen, acuden ante nos el 3 de junio de 2002 y nos señalan que erró el tribunal de instancia al sostener un arresto y allanamiento sin orden con el testimonio claramente estereotipado de agentes policíacos y por no suprimir las declaraciones juradas de los testigos aun cuando se probó que las mismas se debieron a presiones indebidas de los agentes.

Luego de esbozados los hechos pertinentes al presente caso ante nos, procedemos a exponer el derecho aplicable.

## II

### A. Registro y Allanamiento

El Artículo II, Sección 10 de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A., Tomo I, promulga que:

*"No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables...*

*Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación describiendo particularmente el lugar a registrarse y las personas a detenerse o las cosas a ocuparse."*

La protección constitucional de esta cláusula cobija aquella propiedad sobre la cual la persona tenga una expectativa legítima y razonable de intimidad. *Pueblo v. Luzón*, 113 D.P.R. 315, 326 (1982); *Pueblo v. Lebrón*, 108 D.P.R. 324, 331 (1979).

Se considera que son tres (3) los objetivos básicos de esta disposición constitucional: el proteger la intimidad y la dignidad de los seres humanos, amparar sus documentos y otras pertenencias e interponer la figura del juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión. Véase: *Pueblo v. Meléndez Rodríguez*, 136 D.P.R. 587, 597 (1994); *Pueblo v. Martínez Torres*, 120 D.P.R. 496, 500 (1988), citando a *E.L.A. V. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207 (1984); *Pueblo v. Dolce*, 105 D.P.R. 422, 429-431 (1976).

A tenor con lo expuesto anteriormente, en Puerto Rico impera la norma general de que todo registro, allanamiento o incautación que se realice sin que medie una orden de un magistrado se presume ilegal y/o irrazonable y, por ende, la evidencia producto del mismo no puede ser utilizada en un proceso judicial. *Pueblo v. Malavé González*, 120 D.P.R. 470, 476-477 (1988). Es al Ministerio Público a quien le compete rebatir dicha presunción mediante la presentación de prueba sobre las circunstancias especiales que requirieron esa intervención. *Pueblo v. Cruz Torres*, 137 D.P.R. 42, 47 (1994); *Pueblo en interés del menor N.R.O.*, 136 D.P.R. 949, 961 (1994). En tales casos, el fiscal viene obligado a probar que el registro realizado fue legal y razonable y así también, como paso previo, el arresto, debiendo presentar prueba sobre las circunstancias especiales que le permitieron actuar sin orden. *Pueblo v. Ramos Santos*, 132 D.P.R. 363, 370 (1992); *Pueblo v. Martínez Torres*, 120 D.P.R. 496, 502 (1988).

Por otro lado, la Regla 11 de las Reglas de Procedimiento Criminal, 34 L.P.R.A., Ap. II, establece aquellas excepciones en las que los funcionarios del orden público pueden realizar un arresto sin la correspondiente

orden judicial. Procede el arresto sin orden cuando:

*"(1) Tuvieran motivo fundado para creer que la persona que va a ser arrestada ha cometido un delito en su presencia.*

*(2) Cuando la persona arrestada ha cometido un delito grave, aunque no en su presencia.*

*(3) Cuando tuviera motivo fundado para creer que la persona que va a ser arrestada ha cometido un delito grave independientemente de que se hubiere cometido o no en realidad."*

El concepto de motivos fundados se define como aquella información y conocimiento que llevan a una persona ordinaria y prudente a creer que el arrestado ha cometido un delito independientemente que luego se establezca o no su comisión. Esta frase es sinónimo de causa probable, término que es utilizado en el contexto de la expedición de una orden de arresto. *Pueblo v. Martínez Torres,* 120 D.P.R. 496, 504 (1998). La determinación de si existen o no motivos fundados se hace basado en criterios de probabilidad y razonabilidad. Lo importante es si el agente que efectúa el arresto y allanamiento sin orden judicial tiene, al momento de hacerlo, base razonable o motivos fundados para creer que se estaba violando o se iba a violar la ley; esto es, si se desprende, de la totalidad de las circunstancias, que una persona prudente y razonable creería que se ha cometido o se va a cometer un delito en su presencia o la ofensa objeto de una confidencia. *Pueblo v. Ortiz Alvarado,* 135 D.P.R. 41, 47 (1994).

## B. La moción de supresión de evidencia

Uno de los mecanismos de ley creados para proteger a los ciudadanos contra los registros y allanamientos irrazonables es el contemplado en la Regla 234 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 234. La Regla 234 de las Reglas de Procedimiento Criminal, *supra,* por su parte, es la disposición legal que regula lo relativo a cómo solicitar y adjudicar una solicitud de supresión de evidencia. Esta Regla 234 establece lo siguiente:

*"La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal al cual se refiere la Regla 233, la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:*

*(a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.*

*(b) Que la orden de allanamiento o registro es insuficiente de su propia faz.*

*(c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.*

*(d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.*

*(e) Que la orden de allanamiento fue librada o cumplimentada ilegalmente.* ·

*(f) Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente.*

***En la moción de supresión de evidencia se deberán exponer los hechos precisos o las razones específicas que sostenga el fundamento o fundamentos en que se basa la misma. El tribunal oirá prueba sobre cualquier***

*cuestión de hecho necesaria para la resolución de la solicitud. De declararse con lugar la moción, la propiedad será devuelta, si no hubiere fundamento legal que lo impidiere, y no será admisible en evidencia en ningún juicio o vista...".* [Enfasis Suplido].

## C. El testimonio estereotipado

El testimonio estereotipado es aquél que se limita a establecer *"...los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlos." Pueblo v. Rivera Rodríguez,* 123 D.P. R. 443, 480 (1989).

El Tribunal Supremo ha señalado los criterios que deben usar los tribunales de instancia para evaluar la credibilidad del testimonio estereotipado, a saber: (1) debe escudriñarse con especial rigor; (2) tanto los casos de evidencia abandonada como los casos de evidencia ilegal a plena vista deben, en ausencia de otras consideraciones, inducir sospecha de la posible existencia de testimonio estereotipado; (3) si el testimonio es inherentemente irreal o improbable debe ser rechazado; (4) el testimonio estereotipado puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles; (5) la presencia de contradicciones, lagunas o vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de contradicciones; (6) el peso de la prueba de librar el testimonio de sospecha recae en el fiscal. *Pueblo v. González del Valle,* 102 D.P. R. 374, 378 (1974).

El Tribunal Supremo ha expresado que un testimonio honesto no puede calificarse de estereotipado por el simple hecho de que expongas unas realidades fácticas que puedan formar parte del comportamiento usual y de las reacciones de algunas personas al confrontarse con agentes del orden público. *Pueblo v. Espinet Pagán,* 112 D.P.R. 531, 536 (1982).

Por otro lado, en nuestra jurisdicción es norma reiterada que la apreciación de la prueba hecha por el foro primario merece gran deferencia por parte de un tribunal apelativo. En ausencia de error manifiesto, pasión, prejuicio o parcialidad, los tribunales apelativos no intervendrán con la apreciación de la prueba hecha por el Tribunal de Primera Instancia. *Pueblo v. Rodríguez Santana,* Opinión del 23 de octubre de 1998, **98 J.T.S. 141**; *Pueblo v. Maisonave Rodríguez,* 129 D.P.R. 49, 62-63 (1991).

De igual forma, es doctrina firmemente establecida en nuestro ordenamiento que los juzgadores de hecho merecen gran respeto y confiabilidad en la apreciación imparcial de la prueba, pues éstos gozan de la oportunidad de ver y escuchar directamente a los testigos. *Pueblo v. Maisonave Rodríguez, supra.*

### III

Analizado el derecho aplicable, evaluemos los hechos del caso de autos y el error señalado por los peticionarios. Los peticionarios plantean, en síntesis, que erró el tribunal de instancia al no suprimir la declaración jurada prestada por los peticionarios en la cual aceptan los hechos y los relatan tal y como los agentes declararon en la vista de supresión de evidencia.

En el caso de autos surge claramente del testimonio vertido en sala por los agentes que participaron en el arresto que cuando éstos se dirigían a corroborar una confidencia de que en una casa del Sector La Loma del Municipio de Carolina se estaban llevando a cabo transacciones de droga, pasaron frente a la residencia del peticionario Wilfredo Reyes Serrano y observaron cuando el también peticionario Héctor de Jesús Landán, quien tenía su camisa levantada, pillaba una bolsa en su cintura la cual parecía contener picadura de marihuana. Cuando los agentes se identifican, los peticionarios emprendieron carrera. De Jesús Landán fue alcanzado por uno de los agentes, quien lo puso bajo arresto y Reyes Serrano fue arrestado dentro de una habitación de la

residencia donde también fue ocupada un arma, drogas y parafernalia.

Los hechos según narrados evidencian la razonabilidad de la actuación de los agentes. Además, el testimonio vertido en sala por los agentes en la vista de supresión de evidencia no fue uno estereotipado, sino, por el contrario, fue detallado y creíble.

De lo narrado por los agentes, podemos colegir que tenían motivos fundados para realizar el arresto, toda vez que la evidencia por la cual procedieron a intervenir con los peticionarios se encontraba a plena vista. Para determinar si se cumple con lo que se considera evidencia a plena vista, debemos ver el caso normativo de *Pueblo v. Dolce,* 105 D.P.R. 422, 436 (1976). El mismo autoriza la incautación de la evidencia sin orden de registro previa, siempre que se den los siguientes requisitos:

*"1. El artículo debe haberse descubierto por estar a plena vista y no por razón de un registro.*

*2. El agente que observa la evidencia debe haber tenido derecho previo a estar en la posición desde la cual podía verse tal prueba.*

*3. Debe descubrirse el objeto inadvertidamente.*

*4. La naturaleza delictiva de la evidencia, debe surgir de la simple observación."*

Surge del testimonio vertido por los agentes, así como de sus actuaciones el día de los hechos y todo lo que allí sucedió luego de la intervención, que se cumplió a cabalidad con los elementos necesarios para liberar la presunción de la ilegalidad de la intervención que alegan los peticionarios. Además, a tenor con lo declarado, el foro de instancia señaló que *"por entender que el testimonio de los agentes es totalmente creíble y que tanto Héctor como Wilfredo entendieron las advertencias de ley y en su deseo y único fin de que no se involucraron a la familia que estaba con ellos al momento de la intervención, ya que en el caso de Wilfredo, el tío de Wilfredo, el tío reside en el lugar que se intervino, el Tribunal declara SIN LUGAR la Supresión de Evidencia y de confesión".* Resolución, Ap. Recurso de *Certiorari,* a la pág. 48. Por lo tanto, este Tribunal, en ausencia de pasión, prejuicio o parcialidad, no intervendrá con la apreciación de la prueba realizada por el foro de instancia.

**IV**

Por los fundamentos anteriormente expuestos, denegamos la expedición del auto en el presente recurso.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General